RAKESTRAW, INDIVIDUALLY AND AS ADMX., *v.* CITY OF CINCINNATI ET AL.

(No. 6119—Decided May 4, 1942.)

*Mr. Harry Falk,* for relator.

*Mr. John D. Ellis,* city solicitor, and *Mr. Edward F. Alexander,* for respondent, the city of Cincinnati.

*Mr. Leonard Rowe,* for respondent, Octavia Rakestraw.

Ross, J. This is an original action in mandamus. The relatrix seeks to have this court issue its writ to the Board of Trustees of the Retirement System of the city of Cincinnati, ordering such trustees to pay to her as the widow of Lonnie Rakestraw death benefits payable by reason of his death. The respondent, Octavia Foster, claims such benefits by reason of a designation filed by the deceased employee with the retirement trustees. We are concerned here only with the question of whether the relatrix was entitled to the writ.

Lonnie Rakestraw was employed in the department of highways of the city of Cincinnati. He had been

for many years a contributing member to a retirement system maintained by such city.

The ordinance of the city of Cincinnati and the contract between the employee and the trustees limit the right of the employee in designating a beneficiary to a designation of one who has an insurable interest.

The undisputed evidence presented to this court develops that Lizzie Rakestraw at the time of the death of Lonnie Rakestraw was his legal wife, a valid marriage ceremony having been performed years before between the relatrix and the deceased, and such marriage was never annulled.

However, some years prior to his death, Lonnie Rakestraw deserted his wife and lived with the respondent, Octavia Foster, who assumed thereafter the name of Octavia Rakestraw. There is no evidence presented suggesting that the relationship of Octavia and Lonnie was other than wholly illegal and meretricious.

Octavia Foster knew of the existing legal marriage of Lonnie and Lizzie, and does not claim that she thought the parties were divorced. She, therefore, cannot claim the existence of a putative marriage, or a common-law marriage. *Johnson* v. *Wolford,* 117 Ohio St., 136, 141, 157 N. E., 385. Her sole claim to the death benefits must be and is predicated upon the designation by the deceased. Such claim is valid unless it appears that she has no insurable interest in the life of the deceased. If she has not such insurable interest the limitation in the ordinance and contract would vitiate the designation, and the death benefits, in the absence of an alternative valid designation, would be payable to Lizzie Rakestraw, the legal wife of Lonnie Rakestraw at the time of his decease.

A consideration preliminary to a determination of the existence or absence of insurable interest in the

respondent is presented by the claim that no one but the payor of the insurance or benefits can raise the lack of insurable interest in the designatee. *Pierce, Admx.,* v. *Metropolitan Life Ins. Co.,* 46 Ohio App., 36, 187 N. E., 77; *Northwestern Mutual Life Ins. Co.* v. *Coshocton Glass Co.,* 13 C. C. (N. S.), 229, 235, 238, 21 C. D., 665.

The relatrix must prevail in this proceeding for mandamus by showing a clear legal right to the writ in herself. 25 Ohio Jurisprudence, 997, Section 23.

Now the trustees in their answer deny the right of the relatrix to the death benefits and "deny that relatrix in her individual capacity had an insurable interest in the life of said Lonnie Rakestraw." It is alleged that the deceased employee designated in his sworn membership statement filed with the board of trustees, his wife, Octavia Rakestraw. The trustees, however, add an allegation that "both said Octavia Rakestraw and said Lizzie Rakestraw have filed claims with the board of trustees" and further state that such trustees are able and willing to pay the sum due to "whichever of said two claimants may be adjudged by the court to be entitled thereto." The prayer of the answer is that if the relatrix is entitled to the benefits a writ may issue requiring the trustees to pay same to relatrix and if the respondent, Octavia Rakestraw, be entitled to same the writ may be denied. Nowhere except as just noted is there any denial that Octavia Rakestraw is entitled as designated wife to such death benefits.

This is not a petition in interpleader, even if in this action at law the same were proper. The city denies the right of the relatrix to the death benefits. Nowhere is the right of the respondent Octavia Rakestraw impugned.

It, therefore, appears that the only person raising

any question as to the insurable interest of the *respondent,* Octavia Rakestraw, is the relatrix and that the rule laid down in *Pierce, Admx.,* v. *Metropolitan Life Ins. Co., supra,* applies and that the relatrix cannot raise the question in this action.

The designation being otherwise valid, such a situation alone would require denial of the writ. However, as other considerations require the same conclusion, this solution of the controversy is passed for the moment.

Did Octavia Foster have an ''insurable interest'' in the life of Lonnie Rakestraw? In approaching this question, it is to be borne in mind that the public policy of the state is not involved where the insured selects his beneficiary. Such policy only raises its bar where one seeks to insure the life of another in whom there exists no insurable interest. The reason for the application of public policy adversely to such a situation must be entirely apparent, as conducive to fraud or even tragic consequences. Such wager policies have no standing in law. 22 Ohio Jurisprudence, 403, Section 261; *Schmidt, Admx.,* v. *Prudential Ins. Co.,* 37 Ohio App., 258, 174 N. E., 605.

Certain other facts presented to the court here become pertinent. Octavia Foster and the deceased jointly signed a promissory note and chattel mortgage upon the chattels possessed by Octavia Foster. If this note were not paid and the chattels did not sell for enough to satisfy the indebtedness, Octavia Foster would be liable for a judgment for the deficiency. The deceased was contributing to the retirement of this indebtedness. Octavia also assumed the funeral expenses of the deceased, and in any event would be subrogated to the claim of the undertaker to the amount of such indebtedness, when such debt is paid, if the

sum incurred was a reasonable charge under all the circumstances.

On the other hand, the relationship of Octavia Foster and Lonnie Rakestraw can be considered nothing more than purely a meretricious cohabitation.

What is meant by the term "insurable interest"?

In *Northwestern Mutual Life Ins. Co.* v. *Coshocton Glass Co.,* 13 C. C. (N. S.), 229, at 237, 21 C. D., 665, the court says:

"We are conscious of the difficulty of defining with absolute precision what will in all cases constitute an insurable interest in the life of a person, so as to take a contract of insurance out of the class of wager policies. But we believe the test to be that where there is a reasonable ground, founded upon the relations of the parties to each other contractual, or by blood or affinity, whereby any pecuniary interest arises in the continuance of the life or expected benefit, or advantage from the continuance of the life of such person, there is an insurable interest in his or her life.

"Elliott on Insurance, Section 57, and *Warnock* v. *Davis,* 104 U. S., 775, seem to favor and support this principle.

"Bliss on Life Insurance, Section 21, says:

" 'The tendency of the American decisions, especially the more recent ones, is to hold that wherever there is any well founded expectation of or claim to any advantage to be derived from the continuance of a life, there is an insurable interest in that life, though there may be no claim that can be recognized in law or equity.'

"The interest required need not be such as to constitute the basis of any direct claim in favor of the plaintiff, the glass company, upon the life of the insured, Gainor; it is sufficient if an indirect advantage may result to the plaintiff from the continuance of his life."

In 22 Ohio Jurisprudence, 404, Section 262, it is stated:

"With respect to life insurance it seems that the necessary interest may rest either upon a pecuniary basis, or upon consanguinity or affinity, where the relationship between the insured person and the recipient involves a reasonable claim to support, or indicates some benefit or advantage to be derived from the continuance of the life insured. Undoubtedly, within certain degrees, mere relationship is sufficient, the essential thing being that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the beneficiary has no interest. As has been well said: If there exists a reasonable expectation of benefit from the continuance of the life insured, it is immaterial whether it rests upon a pecuniary or contractual relation, or upon consanguinity or affinity."

In 29 American Jurisprudence, 309, Section 353, we find the rule stated as follows:

"While all the authorities are agreed that an insurable interest of some sort must exist in the case of life insurance, the authorities are not exactly agreed on the question of what constitutes the requisite interest. There are cases which hold that the interest must be a pecuniary one and that near relationship is not *per se* enough. The weight of authority, however, is to a different effect. The general rule supported in substance by most of the cases is that any reasonable expectation of benefit or advantage from the continued life of another creates an insurable interest in such life; the advantage or benefit need not be capable of pecuniary estimation, but an insurable interest may be predicated upon any relation which is such as warrants the conclusion that the person claiming an in-

surable interest has an interest, whether pecuniary or arising from dependence or natural affection, in the life of the person insured. An insurable interest in the life of another has been defined by statute as a lawful economic interest in having the life of another continue, as distinguished from an interest which would arise only by the death of the insured.''

It is also to be borne in mind that most of the authorities discussing an insurable interest do so from the viewpoint of the so called ''wager policy,'' and that we are here considering the disposition of a valid insurable interest of the deceased in his own life to a designated beneficiary. Authorities, therefore, adverse to the existence of such insurable interest in a beneficiary must be closely examined when sought to be applied to a case where the insurance has been taken out by the insured and a designation made by him.

In 29 American Jurisprudence, 312, Section 355, it is stated:

''There is a very definite distinction between the questions as to the insurable interest of one taking out a policy on the life of another and as to the right of one to take out a policy on his own life for the benefit of another. The general rule is that every person has an insurable interest in his own life and may insure it for the benefit of his estate, and may also, in the absence of statute, insure it in good faith for the benefit of any person whom he sees fit to name as the beneficiary, regardless of whether such person has an insurable interest in his life. The doctrine is based upon the theory that it is not reasonable to suppose that a person will insure his own life for the benefit of another for the purpose of speculation, or be tempted to take his own life in order to secure the payment of money to another, or designate as the beneficiary a

person interested in the destruction, and not in the continuance, of his life."

It has been pointed out that the respondent and the deceased were co-obligors upon a note and chattel mortgage. In 29 American Jurisprudence, 318, Section 360, it is stated:

"While but few cases have passed upon the point, they are unanimously in support of the principle that co-obligors have an insurable interest in the lives of each other. Thus, a surety on a bond or obligation has an insurable interest in the life of his principal, and persons jointly and severally bound on an obligation incurred in a business venture have an insurable interest in each other's lives."

In *Lampkin* v. *Travelers' Insurance Co.,* 11 Colo. App., 249, at pages 262 and 263, 52 P., 1040, we find the most favorable statement of law to the respondent, as follows:

"We might have some doubt as to the correctness of these views if the plaintiff had no insurable interest in the life of the deceased, admitting that the relationship between them was as claimed by defendant. This, however, is not the case. The broad rule is that when from personal relations between parties, one has a reasonable right to expect some pecuniary advantage from a continuance of the life of the other, or to fear loss from his death, an insurable interest exists. May on Insurance, Section 102a. It is also expressly laid down that a woman illegally married, because the husband had a lawful wife, or living unlawfully with a man as his wife, as is claimed by the defendant to be the case here, has an insurable interest in the man's life. Bliss on Insurance, Section 26; May on Insurance, Section 107b. A lengthy and well-considered case in Georgia very aptly expresses the reason of this rule.

It says: 'In this case, though the marriage was illegal, yet in fact the woman had an interest in the life of the husband. He treated her as his wife; he supported her as such; she passed in society as such; and she was dependent upon him for support as such. It was the husband who in fact effected this policy. It was his own method of extending to this woman his assistance and protection after he should himself be dead.' The *Equitable Life Assurance Soc'y.* v. *Paterson,* 41 Ga., 365.''

The effect of this conclusion of the court is somewhat affected by the facts in the case which show that it was at least doubtful whether the claimant knew of the continued marriage relationship between her cohabiter and a legal wife. The language quoted, however, coincides with our view of the matter.

We are not called upon to pass upon the claim of a meretricious cohabitater who predicates her claim of insurable interest alone upon such relationship. In the case at bar, as hereinbefore noted, other circumstances prevailed which may be fairly considered as developing an insurable interest in the respondent, Octavia Foster. Certainly, it is apparent that the state of the respondent after the death of Lonnie Rakestraw was financially less favorable, unless the benefits are payable to her. She had every reason to desire his continuance in life. His death was a disaster as far as she was concerned.

It must be concluded, therefore, that she had an insurable interest in the life of Lonnie Rakestraw.

The request of the relatrix for a writ is denied, for the reason that although she was the legal wife of the deceased, he designated the respondent, Octavia Foster, or Rakestraw, as his beneficiary and there appears no reason for considering such designation invalid,

even if the relatrix could question the right of the respondent, Octavia Foster (Rakestraw), to profit as the designated beneficiary of such death benefits.

. *Writ denied.*

MATTHEWS, P. J., concurs.
HAMILTON, J., not participating.