[No. 33187. *En Banc.* May 10, 1956.]

MIRIAM JONES, *Respondent*, v. LORENZO E. JONES, *Appellant*.[1]

*Wright & Wright,* for appellant.

*Oliver J. Neibel, Jr.,* for respondent.

[1]Reported in 296 P. (2d) 1010.

FINLEY, J.—This is a domestic relations case.

In 1953, plaintiff wife instituted an action for separate maintenance. On April 7, 1954, defendant husband filed an amended cross-complaint for annulment and alleged that, at the time of the marriage of the parties, he was not divorced from a previous wife.

As a preliminary matter, the plaintiff wife was awarded temporary attorney's fees of one hundred dollars, and was awarded one half of the net monthly earnings of the husband as temporary support money. Up to the date of the trial of the annulment action, the husband had paid only the sum of seventy-five dollars; consequently, the delinquent monthly payments amounted to a sizeable sum. The parties agreed that the question of the amount of the accrued unpaid support money would be submitted to the court for the entry of judgment thereon in connection with the disposition of the annulment action.

The trial judge, finding that the marriage was void *ab initio*, entered a decree of annulment. On conflicting testimony, he found that the husband's net monthly earnings were approximately $480.79. He entered judgment for the wife in the sum of $1,923.16, representing the accrued unpaid portions of the husband's net earnings previously awarded to her as temporary support. The wife was awarded the sum of $775 in lieu of a division of the property of the parties, and to secure payment thereof a lien was impressed upon the husband's Jaguar automobile and his sailboat. Custody of the minor child of the parties was given to the wife, subject to reasonable visitation by the husband at the wife's home under her supervision and control. War bonds in the amount of four hundred dollars and a two-thousand-dollar endowment insurance policy on her own life were awarded to the wife, as well as court costs, five hundred dollars additional attorney's fees, fifty dollars per month for support of the minor child, and *one hundred fifty dollars per month alimony. The alimony was granted for a period of fourteen months from the date of the decree of annulment.* The court further ordered that the husband should keep up a life insurance policy on himself in the amount of twelve

thousand dollars, maintaining the wife and child as the beneficiaries thereof until the child should become eighteen years of age. The husband has appealed.

We are convinced that the only question raised by appellant's assignments of error which merits consideration on this appeal is whether statutory authority exists in this state for the allowance of the monthly alimony payments for the period of fourteen months, commencing after the entry of the decree of annulment in which the marriage was held to be void *ab initio*.

It has been said, and rightly so, that alimony was unknown to the common law; that it is a creature of statute. No citation of authority should be necessary for the proposition that alimony in divorce and annulment cases involves a question of public policy peculiarly within the province of the legislature, and that the legislature has the power and can authorize the courts to grant alimony in divorce and annulment cases. II Vernier, American Family Laws, 65 § 73 *et seq.*, reports that in a number of states alimony is awarded by the courts in connection with the termination of void marriages through *application of the general divorce statutes* of such states. In I Vernier, *supra,* § 53, it is also indicated that the legislatures of several other states have enacted specific statutes relative to annulment, which clearly authorize the courts, in their discretion, to award alimony in *cases of annulment* of a marriage void *ab initio*.

Prior to the enactment of chapter 215, Laws, 1949, p. 698, this court recognized the general rule that, where the husband seeks annulment of a marriage on the ground of a prior marriage of the wife, the latter is entitled to alimony *pendente lite* until the invalidity of the marriage is clearly proved. *Davis v. Davis,* 12 Wn. (2d) 499, 122 P. (2d) 497. In the early case of *Arey v. Arey,* 22 Wash. 261, 60 Pac. 724, the wife brought an action to annul an illegal marriage on the ground of nonage, and the court held that she was entitled to an allowance of suit money and alimony *pendente lite*.

In some instances of legal import, the general statement has been made that the granting of alimony is dependent

upon the prior existence of a valid marriage contract; but, as in the case of many broad, sweeping legal generalizations, this one is subject to considerable critical analysis.

In *Johnson v. Johnson,* 295 N. Y. 477, 68 N. E. (2d) 499, the New York court of appeals stated:

"True enough, the prime evil which the commission sought to remedy was the unhappy plight of the innocent wife married to a bigamist husband; under the law as it then existed, she could terminate this undesirable and illegal relationship only at the cost of relinquishing all claim to support, while the offending husband could, at his pleasure, avail himself of the invalidity of a marriage—void because of his own misdeed—and slough off the financial responsibilities which he had voluntarily assumed. Nevertheless, the commission obviously did not desire to restrict the application of the statute to that situation alone."

In *Fowler v. Fowler,* 97 N. H. 216, 84 A. (2d) 836, the supreme court of New Hampshire held that the statutory authority to award alimony to a wife in an annulment suit is not affected by the fact that the marriage is void *ab initio,* and said:

"The authority of the court derives from the statute, and is in no way made to depend upon the existence of a marriage which was merely voidable, rather than void. . . . Common law principles which might produce a different result do not apply."

In I Vernier, American Family Laws, 266, § 53, the author recognizes that there is some difference of opinion relative to the granting of alimony in annulment suits. However, he also recognizes the facts of life—that alimony is often justified upon practicable moral or social considerations, or upon equitable grounds in annulment cases. The author states:

"The nature of annulment being a restoration of the parties to their former status, their rights of property existent at the time of marriage must be protected. But the mere restoration of rights would, in many cases, not guarantee justice to the parties. The marriage, although voidable, may have given rise to effects that cannot be equitably eradicated by a mere revival of the pre-marital status. Broadly speak-

ing, the same considerations may be present in marriages terminated by annulment as through divorce, and the same rights and remedies would seem to be applicable."

The above-quoted authorities are of some interest and significance relative to the wisdom inherent in any legislative judgment that alimony should be granted on a fair and equitable basis in the discretion of the courts in annulment cases. Admittedly, the references are not conclusive authority, bearing upon the question of whether our state legislature authorized the granting of alimony in annulment cases by enacting chapter 215, Laws, 1949.

In the recent case of *Loomis v. Loomis,* 47 Wn. (2d) 468, 288 P. (2d) 235, we held that the legislature, in enacting chapter 215, Laws, 1949, authorized the granting of alimony *in cases of divorce.* In our judgment, for the reasons indicated hereinafter, the *Loomis* case is controlling relative to the question in the case at bar.

It should be crystal clear that, in enacting chapter 215, Laws of 1949, the legislature completely rewrote the *divorce* and *annulment* laws of our state. The title of the act is indicative of this. It reads:

"An Act relating to the dissolution of marriage by divorce or annulment, separate maintenance, the custody of children, division of property, allowances for support, prescribing procedure and duties of prosecuting attorneys in connection therewith and repealing certain prior inconsistent statutes."

In §§ 8, 9, 11, 12, 13, 14, 15, 16, and 17 of the act, the legislature, in referring to divorces, also consistently referred in conjunction therewith to the matter of annulment. Section 11 of the act (*cf.* RCW 26.08.110) reads as follows:

"Sec. 11. In all cases where the Court shall grant a *divorce or annulment,* it shall be for cause distinctly stated in the complaint, proved, and found by the Court. Upon the conclusion of a *divorce* or *annulment* trial, the Court must make and enter findings of fact and conclusions of law. If the Court determines that either party, or both, is entitled to a *divorce or annulment,* judgment shall be entered accordingly, granting the party in whose favor the Court decides a *decree of full and complete divorce or annulment,* and making *such disposition of the property of the parties, either*

*community or separate, as shall appear just and equitable,* having regard to the respective merits of the parties, to the condition in which they will be left by such *divorce or annulment,* to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provision for costs, and for the custody, support and education of the minor children of such marriage. *Such decree as to alimony* and the care, custody, support and education of children may be modified, altered and revised by the Court from time to time as circumstances may require. Such decree, however, as to the dissolution of the marital relation and to the custody, management and division of property shall be final and conclusive upon both parties subject only to the right to appeal as in civil cases, and provided that the Trial Court shall at all times including the pendency of any appeal, have the power to grant any and all restraining orders that may be necessary to protect the parties and secure justice." (Italics ours.)

It is quite significant that in § 11 the legislature referred five times, specifically and consistently, to *both divorce and to annulment.* Among other things, in § 11, the legislature states that "such decree as to alimony . . . may be modified, altered and revised by the Court from time to time as circumstances may require." Grammatically and logically, this language refers to the antecedent phrase: "decree of full and complete *divorce or annulment."* Only by distorting or by completely ignoring grammatical construction can it be said that the particular language refers solely to divorce. The common-sense, ordinary interpretation of the language relative to modification of decrees is that it contemplates the *modification* of alimony in both *divorce* and *annulment* cases, and that it also contemplates the *award* of alimony in *both instances.* In the latter connection, it is fairly difficult to imagine how alimony logically can be *modified, altered* and *revised* by the courts in *divorce* or *annulment* cases, if, in the first place, the courts are not authorized by the statute to grant alimony in cases of *divorce* or *annulment.*

The decision in the *Loomis* case, *supra,* mentions that, prior to the enactment of the comprehensive divorce act of

1949 (chapter 215, Laws of 1949), alimony was allowed in divorce cases on the basis of previously existing statutory language authorizing the courts to make an equitable distribution of the property of the parties. The *Loomis* case points out that comparable language is carried over into the divorce act of 1949. Section 11 thereof specifically provides, with respect to "a decree of full and complete *divorce* or *annulment*," that the court may make "such disposition of the property of the parties, either community or separate, as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they will be left by such *divorce* or *annulment*."

Thus, previously existing statutory language now incorporated in § 11, under which alimony was granted by the court in divorce cases prior to the divorce act of 1949, refers not only to *divorce*, but to *annulment*. If the reasoning and the result reached in the *Loomis* case is sound—namely, that the language of § 11 authorizes alimony in divorce cases (and we think it is sound), then, because § 11 does not distinguish in any way between *divorce* and *annulment*, but, on the contrary, the references throughout the section are to *both divorce and annulment*, it follows that the statute authorizes the courts to grant alimony in both *divorce* and *annulment* cases. In the final analysis, the decision in the *Loomis* case involves interpretation or a determination of the meaning of the language of § 11. The same language and the same interpretation or meaning, as a matter of grammatical construction, applies to and is controlling in the case at bar relative to annulment.

We cannot agree with the contention of the appellant *that chapter 215, Laws of 1949, does not authorize alimony in annulment cases.* Such a conclusion seems to us to be inconsistent with the general intent of the act and contrary to the common-sense meaning of the language of § 11 thereof. It is not for the judiciary to pass upon the wisdom exercised by the legislature in such a matter of public policy, nor to substitute judicial judgment for legislative judgment in such matters. The appellant, in effect, suggests that we should write out of the statute, or, by judicial veto, that we

should negative legislative consideration, action, and decision on a matter of public policy which legal authorities recognize is a matter within the province or prerogative of the legislative branch of state government. Any such action on our part would not be authorized by our state constitution, nor would it be permissible by reason of any inherent judicial power of which we are aware.

We believe the foregoing discussion provides a more than adequate answer to appellant's contention that no statutory basis exists in this state for the granting of alimony in cases of annulment of void marriages. While it is not essential to a decision of the matter, nevertheless, we think it is significant and well worth mentioning that support for the view we express herein may be found in an article entitled, *The Divorce Law of 1949,* written by the chairman of the Washington state bar association committee which drafted and sponsored the enactment of the 1949 act. See 24 Wash. L. Rev. 123 (1949). Relative to § 11 of the act of 1949, the article reads, in part, as follows:

*"Throughout this section, the court is given the same powers and duties in granting an annulment as in granting a divorce.* As to children, this section is largely a restatement of the principle declared in Section 6, requiring that in all circumstances the children of annulled marriages shall be treated exactly as are those of valid marriages dissolved by divorce. By this section, *the court is given the further power to take under its jurisdiction the property of the parties to an annulment action and to make equitable distribution of the same on the principles which govern such disposition in actions for divorce."* (Italics ours.)

See, also, 30 Wash. L. Rev. 62, 67, which reads, in part, as follows:

"Suit costs and fees, support of children, authority of the court to make disposition of the property of the parties, *and alimony,* are further factors which need not be a hindrance to the pursuit of annulment or decree of nullity, in that by statute they have become as readily available in suits for annulment or decree of nullity as they are in actions for divorce." (Italics ours.)

In our best judgment, the decree of the trial court should be affirmed in all respects. It is so ordered.

HAMLEY, C. J., WEAVER, ROSELLINI, and OTT, JJ., concur.

DONWORTH, J. (concurring)—I concur in the result of the majority opinion for the reason that the legislature, in 1949, changed its policy regarding the power of the superior court to award alimony in annulment cases. Prior to the enactment of RCW 26.08.110 in 1949, this court had held that under the prior statute the existence of a valid marriage was a condition precedent to the power of the court to grant alimony to the wife. *State ex rel. Davis v. Superior Court,* 200 Wash. 670, 94 P. (2d) 478.

In § 11 of chapter 215, Laws of 1949, p. 701 (RCW 26.08-.110), the legislature expressed its intention to change its policy by using the terms "divorce or annulment" therein five times without distinction, treating the two types of proceedings in precisely the same manner with respect to the power of the court to award alimony.

We have recently held, in *Loomis v. Loomis,* 47 Wn. (2d) 468, 288 P. (2d) 235, that under RCW 26.08.110 the superior court has power to award alimony in a divorce action.

Since the legislature has, by enacting RCW 26.08.110, abolished the distinction theretofore existing between divorce actions and annulment proceedings with regard to awarding alimony (the two words being used interchangeably), it follows that the trial court had power to enter its decree granting the wife alimony in the instant annulment proceeding.

I therefore concur with the majority in affirming the decree of the trial court.

MALLERY, J. (dissenting)—The plaintiff brought an action for separate maintenance in 1953. April 7, 1954, defendants filed an amended cross-complaint for annulment of the marriage, which had purportedly been entered into in Lincoln, Nebraska, on June 29, 1949. It is not disputed that defendant was then married to another woman. The trial court found the marriage to be void *ab initio* and granted an annulment.

It divided the property of the parties, allowed attorney's fees, gave plaintiff custody of their minor child with visitation privileges to the father, provided fifty dollars a month for child support, and awarded plaintiff one hundred fifty dollars a month *alimony* for fourteen months. The alimony provision is the sole subject of this appeal.

There is no statutory provision in this state for an award of alimony in the annulment of a marriage void *ab initio*. There are no cases in this state supporting the trial court's authority, *under the common law*, to make such an award.

The legal liability of one person for the support of another has been predicated from time immemorable upon some legally recognized relationship. In the absence of a marital, contractual, or blood relationship between the parties, there seems little common-law basis for sustaining such a liability. It is for the legislature to say otherwise. This is particularly true because the public policy involved is one solely within the province of the legislature, which has purported to deal comprehensively with the subject of divorce and annulment in all its phases.

I dissent.

HILL and SCHWELLENBACH, JJ., concur with MALLERY, J.