[No. 44365. En Banc. January 7, 1977.]

WASHINGTON STATE PUBLIC EMPLOYEES' BOARD, *Respondent,* v. ROBERT T. COOK, ET AL, *Respondents,* GLADYS MATTHEWS, *as Administratrix, Appellant.*

*Black, Christensen & Nielsen, Inc., P.S.,* by *Quinton D. Christensen,* for appellant.

*Rudolf V. Mueller,* for respondents.

HAMILTON, J.—Appellant, Gladys Matthews, as administratrix of the estate of Milo Baker, has appealed the trial court's determination that respondents, Mr. and Mrs. Robert T. Cook, had an insurable interest in Mr. Baker's life. This controversy arose because RCW 41.40.270[1] provides that persons receiving the accumulated contributions of a deceased member of the Washington Public Employees' Retirement System must have an insurable interest in the member's life.

---

[1]RCW 41.40.270 provides, in part:

"(1) Should a member die before the date of his retirement the amount of the accumulated contributions standing to his credit in the employees' savings fund,

Milo Baker was employed by Snohomish County Road District No. 2 and was a member of the Washington Public Employees' Retirement System. On May 8, 1972, after his wife's death, Mr. Baker chose respondents to receive his accumulated contributions in the retirement system. Respondents lived near Mr. Baker and spent much time with him after his wife's death. Mr. Baker died on December 24, 1973, and appellant, his sister, was appointed administratrix of his estate. At the date of his death, Mr. Baker's accumulated contributions in the retirement system totaled $10,601.79

On May 10, 1974, respondents filed a claimant's certificate with the Washington Public Employees' Retirement Board seeking payment of Mr. Baker's accumulated contributions. Approximately 2 weeks later, appellant filed a claimant's certificate on behalf of the estate[2] asserting that respondents could not receive Mr. Baker's accumulated contributions under RCW 41.40.270, because they had no insurable interest in his life. The retirement board then filed this interpleader action seeking an interpretation of RCW 41.40.270 and deposited the funds with the court.

The trial court found that respondents did have an insurable interest in Mr. Baker's life under RCW 41.40.270 based on their long–standing relationship of mutual respect, confidence, and affection. The court also concluded that

---

at the time of his death, shall be paid to such person or persons, *having an insurable interest in his life,* as he shall have nominated by written designation duly executed and filed with the retirement board. If there be no such designated person or persons still living at the time of the member's death, his accumulated contributions standing to his credit in the employees' savings fund shall be paid to his surviving spouse as if in fact such spouse had been nominated by written designation as aforesaid, or if there be no such surviving spouse, then to his legal representatives; . . ." (Italics ours.)

[2]Mr. Baker's last will and testament left all of his estate to his wife. Because his wife predeceased him, the assets of the estate pass as if he had died intestate. Mr. Baker's only heirs are appellant and two other sisters.

if it were necessary to closely limit the definition of "insurable interest" to exclude those having an interest based on love and affection, . . . the limitation contained in [RCW] 41.40.270 would be unconstitutional as unnecessarily encroaching on an individual's right to property and his commonlaw [sic] right to dispose of property.

Judgment was then entered for respondents.

We turn first to the issue of whether respondents had an insurable interest in Mr. Baker's life, because, if we rule in respondents' favor on this issue, the constitutional question does not arise. The phrase "insurable interest" is a phrase of art in the law. It is usually employed in the context of procuring insurance, *i.e.*, to restrict the class of persons who may be named beneficiaries when one person procures an insurance contract on the life of another.[3] Although the phrase "insurable interest" is not defined in RCW 41.40, it usually means that the person named as a beneficiary must either be related to the insured by blood or marriage or have an economic interest in the continuation of the life of the insured.[4]

---

[3]One definition of "insurable interest" is found in RCW 48.18.030(3), which provides:

"(3) 'Insurable interest' as used in this section and in RCW 48.18.060 includes only interests as follows:

"(a) In the case of individuals related closely by blood or by law, a substantial interest engendered by love and affection; and

"(b) In the case of other persons, a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the individual insured.

"(c) An individual heretofore or hereafter party to a contract or option for the purchase or sale of an interest in a business partnership or firm, or of shares of stock of a close corporation or of an interest in such shares, has an insurable interest in the life of each individual party to such contract and for the purposes of such contract only, in addition to any insurable interest which may otherwise exist as to the life of such individual.

"(d) A guardian, trustee or other fiduciary has an insurable interest in the life of any person for whose benefit the fiduciary holds property, and in the life of any other individual in whose life such person has an insurable interest."

[4]One authority has noted that the majority of cases dealing with persons related by blood or marriage do not base their decision on the fact of that relationship alone, but hold that, in view of the relationship, it is proper to conclude

A person has an insurable interest in the life of another if he can reasonably expect to receive pecuniary gain from the continued life of the other person and conversely, if he would suffer financial loss from the latter's death, regardless of whether such expectation is based upon the status of a contracting party as a creditor of, or surety for, the insured, or from the ties of blood or marriage to him. The interest, to be insurable, must be one in favor of the continuance of the life, and not an interest in its loss or destruction.

(Footnotes omitted.) 3 R. Anderson, *Couch Cyclopedia of Insurance Law* § 24:119, at 225–26 (2d ed. 1960).

The major reason for restricting beneficiaries to those having an insurable interest is to prevent wagering. It would be highly objectionable if a person, who has no identifiable interest in the continuation of the life of another, could procure an insurance contract on that other person's life and name himself as beneficiary with the sole expectation of receiving an economic windfall, if the insured should not live to his normal life expectancy.

The trial court found that respondents did have a pecuniary interest in the continuation of Mr. Baker's life, because the longer he lived, the greater his accumulated contributions would be in the retirement system. Although the record is replete with evidence that respondents and Mr. Baker enjoyed a relationship found between close friends, when speaking purely of respondents' *pecuniary* interest in the continuation of Mr. Baker's life, we feel the trial court's analysis is misplaced. Under the trial court's analysis, the respondents' pecuniary interest was not in the continuation of Mr. Baker's life, but in the continuation of his employment. The respondents' pecuniary interest would have ceased to exist when Mr. Baker retired and began drawing his retirement allowance. At that point, a member is no longer contributing to the retirement system but is

---

that had the deceased person continued to live, the other person could have expected to receive a pecuniary benefit or gain. *See* R. Anderson, *Couch Cyclopedia of Insurance Law* § 24:120, at 228 (2d ed. 1960).

drawing on his contributions by receiving his retirement allowance. We note that a person named as a beneficiary to receive a member's accumulated contributions may also receive them after the member has retired. *See* RCW 41.40.185(5) and RCW 41.40.190(6). These provisions also require that the beneficiary have an insurable interest in the member's life. If we were to follow the trial court's definition of pecuniary interest, we would be creating one definition of "insurable interest" for beneficiaries of members who have not retired and another definition of "insurable interest" for beneficiaries of members who have retired and are receiving their retirement allowance. This we decline to do.

 It has been suggested that we should give a different meaning to "insurable interest" as that phrase is used in RCW 41.40.270, because the concern regarding wagering is not present in this situation. There is no procurement of insurance by someone other then the insured with the expectation of receiving an economic windfall. Rather, a member of the retirement system is simply designating the beneficiary to whom his accumulated contributions are to be paid. The word "affinity" is often used to describe persons who have an "insurable interest" in the life of another, and its meaning could possibly be expanded to include mutual respect and affection.[5] However, for us to expand the definition of "affinity" so that the phrase "insurable interest" would include a relationship engendered by mutual respect and affection would be tantamount to our writing the words "insurable interest" out of the statute. In the absence of clear legislative history indicating that the legislature intended the phrase "insurable interest" to be so

---

[5]In its most common meaning, "affinity" defines the relationship between a wife and her husband's blood relatives or a husband and his wife's blood relatives. *See Louisville & N.R.R. v. Holland,* 173 Ala. 675, 55 So. 1001 (1911); *McDaniel v. State,* 228 Ark. 1122, 313 S.W.2d 77 (1958); *Clawson v. Ellis,* 286 Ill. 81, 121 N.E. 242 (1918); *State v. Hooper,* 140 Kan. 481, 37 P.2d 52 (1934); *Kest v. Lewis,* 169 Ohio St. 317, 159 N.E.2d 449 (1959); *Graham v. Thompson,* 174 Tenn. 278, 125 S.W.2d 133 (1939); *Texas Employers' Ins. Ass'n v. McMullin,* 279 S.W.2d 699 (Tex. Civ. App. 1955).

expansive, we must presume that the legislature used this phrase in its traditional sense. This means that under RCW 41.40.270, the beneficiary must either be closely related to the member by blood or marriage, or have a pecuniary interest in the continuation of the member's life.

■ Because respondents did not have an "insurable interest" in Mr. Baker's life, the constitutionality of the "insurable interest" requirement must be resolved. The trial court found the requirement unconstitutional, because it unnecessarily encroaches on a member's right to property and his right to dispose of his property. We disagree. The requirement that a beneficiary have an "insurable interest" in the life of the member does not create an absolute ban upon the member giving his accumulated contributions to persons who have no "insurable interest." For example, an unmarried or widowed member may name his estate as the beneficiary and pass his accumulated contributions through his will to whomever he chooses.

We believe the legislature has the authority under its police power to establish a retirement system for public employees because it serves a legitimate public purpose. *See Reasonableness of classification, as regards beneficiaries, by statute providing for retirement fund or pension for public officers or employees*, Annot., 163 A.L.R. 870 (1946); 60 Am. Jur. 2d *Pensions and Retirement Funds* § 3, at 880 n.7 (1972). Accordingly, the legislature also has the power to place reasonable restrictions on a member's choice of beneficiaries. By restricting beneficiaries to those having an "insurable interest" in the member's life, the legislature may have been concerned that the member's contributions go to someone closely related to the member or dependent upon him for support. This concern is within the legislature's police power, and the "insurable interest" requirement is a reasonable means of accomplishing this goal. The role of this court does not encompass a duty on our part to review the wisdom of the legislative act. Indeed, we must be cautious lest we substitute our judicial judgment for the legislative judgment. *See Ketcham v. King County Medical*

*Serv. Corp.,* 81 Wn.2d 565, 502 P.2d 1197 (1972); *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 459 P.2d 937 (1969); *Jones v. Jones,* 48 Wn.2d 862, 296 P.2d 1010, 54 A.L.R.2d 1403 (1956); *Shea v. Olson,* 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998 (1936). We find the requirement that the beneficiary have an "insurable interest" to be a reasonable one, and not unconstitutional.

The judgment of the trial court is reversed, and this case is remanded for entry of a judgment in favor of appellant.

STAFFORD, C.J., and ROSELLINI, HUNTER, and HOROWITZ, JJ., concur.

DOLLIVER, J. (dissenting)—In interpreting the phrase "insurable interest," which is not defined in RCW 41.40-.270, we must first look to the context in which that phrase has been defined.

In its eagerness to rely upon a fixed rule, the majority has overlooked the purpose behind the rule. The rule requiring an insurable interest has no magic in itself. It exists for a specific reason—to assure that the beneficiary has an interest in protecting and prolonging the life of the insured. This purpose, stated inversely, is to prevent wagering: to disallow speculation "'upon the hazard of a life in which the beneficiary has no interest.'" *Rakestraw v. Cincinnati,* 69 Ohio App. 504, 510, 44 N.E.2d 278 (1942); 3 R. Anderson, *Couch Cyclopedia of Insurance Law* § 24:119 (2d ed. 1960). Extensive research has not disclosed any cases which assert a contrary rationale.

The majority suggests the insurable interest limitation may have been included to assure that dependents were cared for from the proceeds of the fund. However, this obviously is not the case since a person with a pecuniary interest in the insured's life, a business partner or creditor, could be named as a beneficiary. This notion is further vitiated by the circumstances pointed out by the majority where an unmarried or widowed member of the retirement system could name his estate as beneficiary and pass his

accumulated contributions through his will to whomever he chooses.

A series of cases from other jurisdictions are cited by the majority which restrict the interpretation of "insurable interest" to relationships of blood or marriage or of a pecuniary nature. Without exception, these cases involve a situation in which the person procuring the policy is not the insured, but rather a third party taking out the policy for the benefit of himself or another person.

There may well be policy reasons for requiring a high, identifiable, or quantifiable standard when the insured is not the procurer or the beneficiary of the policy. The requirement of a relationship by blood or marriage or a pecuniary interest is compatible with this purpose. Our legislature has so found and has specified accordingly. RCW 48.18.030. Anyone, however, can be the beneficiary of an insurance policy in this state if the insured has procured the policy. RCW 48.18.030(1). Thus, although in this state the term "insurable interest" has been defined, it is defined solely in the context of the general insurance statutes and for the specific identifiable purpose of preventing wagering.

The majority has taken the definition of the term "insurable interest" as contained in RCW 48.18.030(3) and engrafted it on the statute dealing with employees' retirement. RCW 41.40.270. This might have some color of legitimacy and be declarative of legislative intent if the reason for RCW 48.18.030(3) was contained in the retirement statute as it is in the general insurance code. But no such reason exists. There is no disclosure of legislative intent in RCW 41.40.270 as to the meaning of "insurable interest"; the reasons for the statutory definition of RCW 48.18.030(3) are not present; and the meaning of "insurable interest" has never been passed on by this court. Thus, it is appropriate to examine the situation as it actually exists and determine what meaning should be given to the term in question.

We have a most ironic situation before us. The sisters of the decedent, according to the majority, have an insurable

interest in the life of Mr. Baker because they are related by blood. Mr. Baker disliked his sisters and apparently the feeling was mutual. He had not seen them for approximately 17 years although one sister lived in the same city and the others were in close geographical proximity. Despite this mutual antipathy, the majority seems willing to find that because Baker and his sisters were related by blood they can be assumed to have an interest in prolonging his life and, therefore, have an insurable interest.

The Cooks were longtime friends of Mr. Baker and remained as his closest friends until his death. They looked out for his welfare and cared for him when he was ill. They gave him gifts at Christmas and shared meals with him. There was mutual love and affection. Indeed, it may be said that they were like family to Mr. Baker. The evidence before the trial court is uncontroverted; the Cooks had an interest in perpetuating the life of Mr. Baker. Yet, the majority is unable to find that an insurable interest existed here.

It may be easier for a court to rely upon a mechanically identifiable relationship of blood or marriage. In doing so, however, we sacrifice fairness for the sake of our own comfort. Moreover, even the language of RCW 48.18.030(3) suggests that the substantial interest from a relationship of blood or law must be engendered by love and affection.

The law does not state inflexibly that *only* a relationship of blood or marriage qualifies as an insurable interest. Other jurisdictions have found that a blood relationship is not necessary for an insurable interest. *See Thomas v. National Benefit Ass'n,* 84 N.J.L. 281, 86 A. 375 (1913); *Rakestraw v. Cincinnati, supra; Green v. Southwestern Voluntary Ass'n,* 179 Va. 779, 20 S.E.2d 694 (1942). The trial court was not in error in finding that the beneficiaries had an interest in protecting, fostering, and prolonging the life of the insured rather than an interest in shortening his life, regardless of their lack of relationship by blood or law. *See Warnock v. Davis,* 104 U.S. 775, 26 L. Ed. 924 (1881).

The Cooks' insurable interest in Mr. Baker's life, based on mutual love and affection, is bolstered by the pecuniary interest they held in Baker's life: that the longer he worked, the larger would be his accumulated contributions. The majority rejects the trial court's finding that respondents' pecuniary interest existed because the pecuniary interest held by the Cooks "would have ceased to exist when Mr. Baker retired and began drawing his retirement allowance." While this may be true, it is irrelevant. At the time of his death, Mr. Baker was fully employed and was contributing to the fund. There is no question but at that time the Cooks were potentially benefiting from Baker's continuing productivity and had a specific pecuniary interest. The majority observes the respondents' pecuniary interest was not in the continuation of Mr. Baker's life but in his continued employment. It should be noted that the continuation of the latter was fully dependent upon the continuation of the former.

The majority would apply a rule where the reason for the rule does not exist; it would exalt a technical relationship and interest where love and affection had long since vanished and ignore an interest engendered by a warm, close, affectionate relationship far more powerful than blood or law; and, finally, it would deny a pecuniary interest because of an indefinite event possibly (although not in this case) occurring in the future. Neither the law nor the equities of this case nor the intent of the legislature requires such an outcome.

I dissent.

WRIGHT, UTTER, and BRACHTENBACH, JJ., concur with DOLLIVER, J.

Petition for rehearing granted September 2, 1977.