[No. 54610–0.   En Banc.   April 27, 1989.]

AUSTIN SOFIE, ET AL, *Appellants,* v. FIBREBOARD CORPORATION, ET AL, *Respondents.*

*Schroeter, Goldmark & Bender, William Rutzick, Janet L. Rice,* and *Kirk I. Mortensen; Stritmatter, Kessler & McCauley* and *Paul Stritmatter,* for appellants.

*Gibson, Dunn & Crutcher,* by *Steven T. Johnson, Kent T. van den Berg, Gary C. Grotz,* and *Mark Hughes,* for respondents Fibreboard, Celotex, Owens–Illinois, and Keene Corporations.

*Williams, Kastner & Gibbs,* by *William H. Mays, Mary H. Spillane,* and *Elizabeth A. Christianson,* for respondent Eagle–Picher Industries.

*McKay & Gaitan,* by *Linda E. Blohm,* for respondent Raymark Industries.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington State Trial Lawyers Association; *Daniel F. Sullivan* and *Jeffrey Robert White* on behalf of Association of Trial Lawyers of America; *Richard H. Robblee* on behalf of United Association of Journeymen and Apprentices, amici curiae for appellants.

*Kenneth O. Eikenberry, Attorney General, Michael E. Tardif, Senior Assistant,* and *Michael Madden, Assistant; Bertha B. Fitzer* and *F. Ross Burgess* on behalf of Washington Defense Trial Lawyers Association and Defense Research Institute; *Jeffrey I. Tilden* and *Rex C. Browning* on behalf of the Liability Reform Coalition, amici curiae for respondents.

[As amended by order of the Supreme Court September 27, 1989.]

UTTER, J.—Austin and Marcia Sofie challenge the constitutionality of RCW 4.56.250. This statute, part of the 1986 tort reform act, places a limit on the noneconomic damages recoverable by a personal injury or wrongful death plaintiff. The Sofies brought a direct appeal to this court after the trial judge in their tort action, under the direction of the statute, reduced the jury's award of noneconomic damages. The respondents subsequently cross–appealed to the Court of Appeals, raising several issues of trial court error, issues we consider here.

The Sofies argue that RCW 4.56.250 violates their constitutional rights to trial by jury, equal protection, and due process. We find that the statute's damages limit interferes with the jury's traditional function to determine damages. Therefore, RCW 4.56.250 violates article 1, section 21 of the Washington Constitution, which protects as inviolate the right to a jury. Because the statute is unconstitutional on this basis, we do not consider its constitutionality under the latter two doctrines raised by appellants, although we briefly survey the equal protection issues. Respondents' arguments concerning trial court error are without merit.

The Washington Legislature passed RCW 4.56.250 in 1986 partly as a response to rising insurance premiums for liability coverage. The damages limit that the statute creates operates on a formula based upon the age of the plaintiff.[1] As a result, the older a plaintiff is, the less he or

---

[1]RCW 4.56.250 states:

"(1) As used in this section, the following terms have the meanings indicated unless the context clearly requires otherwise.

she will be able to recover in noneconomic damages. The trial judge applies the limit to the damages found by the trier of fact. If the case is tried before a jury, the jury determines the amount of noneconomic damages without knowledge of the limit. The jury goes about its normal business and the judge reduces, according to the statute's formula and without notifying the jury, any damage verdicts that exceed the limit.

In September 1987, the Sofies sued Fibreboard Corporation and other asbestos manufacturers for the harm caused to Mr. Sofie by their asbestos products. Mr. Sofie, then aged 67, was suffering from a form of lung cancer—mesothelioma—caused by exposure to asbestos during his career as a pipefitter. At trial, Mr. Sofie's attorneys presented evidence of the extreme pain he experienced as a result of the disease. The testimony indicated that Mr. Sofie spent what

---

"(a) 'Economic damages' means objectively verifiable monetary losses, including medical expenses, loss of earnings, burial costs, loss of use of property, cost of replacement or repair, cost of obtaining substitute domestic services, loss of employment, and loss of business or employment opportunities.

"(b) 'Noneconomic damages' means subjective, nonmonetary losses, including, but not limited to pain, suffering, inconvenience, mental anguish, disability or disfigurement incurred by the injured party, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation, and destruction of the parent–child relationship.

"(c) 'Bodily injury' means physical injury, sickness, or disease, including death.

"(d) 'Average annual wage' means the average annual wage in the state of Washington as determined under RCW 50.04.355.

"(2) In no action seeking damages for personal injury or death may a claimant recover a judgment for noneconomic damages exceeding an amount determined by multiplying 0.43 by the average annual wage and by the life expectancy of the person incurring noneconomic damages, as the life expectancy is determined by the life expectancy tables adopted by the insurance commissioner. For purposes of determining the maximum amount allowable for noneconomic damages, a claimant's life expectancy shall not be less than fifteen years. The limitation contained in this subsection applies to all claims for noneconomic damages made by a claimant who incurred bodily injury. Claims for loss of consortium, loss of society and companionship, destruction of the parent–child relationship, and all other derivative claims asserted by persons who did not sustain bodily injury are to be included within the limitation on claims for noneconomic damages arising from the same bodily injury.

"(3) If a case is tried to a jury, the jury shall not be informed of the limitation contained in subsection (2) of this section."

remained of his life waiting for the next "morphine cocktail," for the next hot bath, for anything that would lessen his consuming physical agony.

At the end of the trial, the jury found the defendants at fault for Mr. Sofie's disease. They returned a verdict of $1,345,833 in favor of the Sofies. Of this amount, $1,154,592 went to compensate noneconomic damages: $477,200 for Mr. Sofie's pain and suffering and $677,392 for Mrs. Sofie's loss of consortium. While the trial judge specifically found the jury's finding of damages reasonable, he indicated he was compelled under the damages limit to reduce the noneconomic portion of the verdict to $125,136.45, resulting in a total judgment of $316,377.45.

## I

Appellants argue that RCW 4.56.250 violates their right to equal protection under the law as guaranteed by Const. art. 1, § 12. This constitutional provision states:

> No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

Although the language of article 1, section 12 differs from the fourteenth amendment to the federal Constitution, this court has generally followed the federal tiered scrutiny model of equal protection analysis originally developed by the United States Supreme Court. *See, e.g., Daggs v. Seattle,* 110 Wn.2d 49, 55, 750 P.2d 626 (1988). We have followed this approach because a separate analysis focusing on the language and history of our state constitution has not been urged. In one of their briefs, appellants point out that this court initially used an analysis based upon the different language of our own constitution. *See, e.g., State v. Carey,* 4 Wash. 424, 30 P. 729 (1892). They argue that it is appropriate to consider both the tiered scrutiny model of equal protection analysis as well as a language–specific analysis similar to the one developed by the Oregon Supreme Court. *See, e.g., State v. Clark,* 291 Or. 231, 630

P.2d 810 (1981); *State v. Edmonson,* 291 Or. 251, 630 P.2d 822 (1981).

In the context of tiered scrutiny, appellants argue that this court should review the noneconomic damages limit under the midlevel scrutiny followed in *State v. Phelan,* 100 Wn.2d 508, 671 P.2d 1212 (1983) and *Hunter v. North Mason High Sch. & Sch. Dist. 403,* 85 Wn.2d 810, 539 P.2d 845 (1975). They contend that Mr. Sofie belongs to a "semi–suspect class"—discrete but not suspect—of severely injured plaintiffs. Citing *Hunter,* they also claim that the damages limit affects an important right: the right to be indemnified for personal injuries. Under such a midtier analysis, this court generally requires that the challenged law further a substantial state interest. *Daggs,* 110 Wn.2d at 55.

Respondents contend that intermediate scrutiny should not apply because the damages limit amounts to economic legislation. Such legislation, they maintain, is reviewed under the deferential rational basis test. In support of this they cite, among other cases, *Duke Power Co. v. Carolina Envtl. Study Group,* 438 U.S. 59, 57 L. Ed. 2d 595, 98 S. Ct. 2620 (1978) (upholding the Price–Anderson Act).

Courts in some other states have struck down similar tort damage limits on equal protection grounds. *See, e.g., Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825, 830 (1980) (striking limit on noneconomic damages after finding right to recover for personal injuries an "important substantive right,") (citing *Hunter*); *Arneson v. Olson,* 270 N.W.2d 125, 132 (N.D. 1978) (applying heightened scrutiny to flat damages limit); *see also* Comment, *Constitutional Challenges to Washington's Limit on Noneconomic Damages in Cases of Personal Injury and Death,* 63 Wash. L. Rev. 653 (1988); *Development in the Law: The 1986 Washington Tort Reform Act,* 23 Willamette L. Rev. 211 (1987). Other courts, however, have upheld limits, analyzing the legislation under the rational basis test. *See, e.g., Fein v. Permanente Med. Group,* 38 Cal. 3d 137, 695 P.2d 665, 211 Cal. Rptr. 368, *appeal dismissed,* 474 U.S. 892, 88 L. Ed. 2d

215, 106 S. Ct. 214 (1985); *see also Boyd v. Bulala,* 647 F. Supp. 781 (W.D. Va. 1986) (finding that damages limit passes the rational basis test under equal protection analysis but violates the right to a jury trial).

As for the analysis based on the language of our privileges and immunities clause, this question must wait for another case.[2]

## II

The dispositive issue of this case is the right to a jury trial.

■ This court has long approached the review of legislative enactments with great care. The wisdom of legislation is not justiciable; our only power is to determine the legislation's constitutional validity. *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 151, 459 P.2d 937 (1969); *State ex rel. Bolen v. Seattle,* 61 Wn.2d 196, 198, 377 P.2d 454 (1963); *Smith v. Centralia,* 55 Wash. 573, 576, 104 P. 797 (1909). In

---

[2]Article 1, section 20 of the Oregon Constitution states:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Under the Oregon court's analysis, no statute can survive merely by showing a rational relationship between the classification and the purpose; it must leave legal entry to a class open and must operate with consistently applied objective criteria. *See State v. Clark,* 291 Or. 231, 630 P.2d 810 (1981); *State v. Edmonson,* 291 Or. 251, 630 P.2d 822 (1981). The court inquires into whether the challenged state action affects a "privilege or immunity"—that is, "some advantage" to which a person "would be entitled but for a choice made by a government authority". *Salem v. Bruner,* 299 Or. 262, 269, 702 P.2d 70, 74 (1985). The next step is to determine whether the action or statute was performed under lawful authority. The court then considers whether the statute or action affects a true class (one with characteristics that set it apart regardless of the statute), or a pseudo–class (one created by the statute), or an individual. To determine whether the statute represents impermissible discrimination, the court has devised different tests for each of these classifications.

For an in–depth analysis of the Oregon court's method for construing its privileges and immunities clause, *see* Schuman, *The Right to "Equal Privileges and Immunities": A State's Version of "Equal Protection",* 13 Vt. L. Rev. 221 (1988). For a privileges and immunities analysis of noneconomic tort damage cap legislation, *see* Note, *Challenging the Constitutionality of Noneconomic Damage Caps: Boyd v. Bulala and the Right to a Trial by Jury,* 24 Willamette L. Rev. 821, 836–38 (1988).

matters of economic legislation, we follow the rule giving every reasonable presumption in favor of the constitutionality of the law or ordinance. *Shea v. Olson,* 185 Wash. 143, 152, 53 P.2d 615, 111 A.L.R. 998 (1936).[3] We employ this caution to avoid substituting our judgment for the judgment of the Legislature. *See State Pub. Employees' Bd. v. Cook,* 88 Wn.2d 200, 206, 559 P.2d 991 (1977), *adhered to on rehearing,* 90 Wn.2d 89, 579 P.2d 359 (1978); *Fritz v. Gorton,* 83 Wn.2d 275, 283, 517 P.2d 911, *appeal dismissed,* 417 U.S. 902 (1974); *Jones v. Jones,* 48 Wn.2d 862, 868, 296 P.2d 1010, 54 A.L.R.2d 1403 (1956); *see also* Utter, *Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights,* 7 U. Puget Sound L. Rev. 491, 522-23 (1984).

---

[3]The dissent of Dolliver, J., is correct in pointing out, at page 677, that *Shea* contains language setting a reasonable doubt standard in favor of the constitutionality of a statute. By citing *Shea,* we incorporate the burden of proof stated in that opinion. In the final analysis, the language quoted by the dissent is merely a different way of stating the rule we cite above. One need only to look at the many cases in which this principle is enunciated to see the different combinations of words used to express it. *State v. Ide,* 35 Wash. 576, 77 P. 961 (1904), which *Shea* cites for authority, puts it this way:

> [I]t is settled by the highest authority that a legislative enactment is presumed to be constitutional and valid until the contrary clearly appears. In other words, the courts will presume that an act regularly passed by the legislative body of the government is a valid law, and will entertain no presumptions again [*sic*] its validity. And, when the constitutionality of an act of the legislature is drawn in question, the court will not declare it void unless its invalidity is so apparent as to leave no reasonable doubt upon the subject. . . .

35 Wash. at 581; *see also Litchman v. Shannon,* 90 Wash. 186, 189, 155 P. 783 (1916); *Chas. Uhden, Inc. v. Greenough,* 181 Wash. 412, 420-21, 43 P.2d 983, 98 A.L.R. 1181 (1935) ("an act of the legislature will be presumed to be valid unless there is no reasonable doubt as to its validity"); *McDermott v. State,* 197 Wash. 79, 83, 84 P.2d 372 (1938) ("Every reasonable presumption must be indulged in favor of the constitutionality of this statute, and the burden rests upon appellant to establish clearly its invalidity"); *Spokane v. Coon,* 3 Wn.2d 243, 246, 100 P.2d 36 (1940) ("every presumption is in favor of the constitutionality of a law or ordinance"). *Brewer v. Copeland,* 86 Wn.2d 58, 542 P.2d 445 (1975), describes the standard twice, each time with different words. At page 61 this court stated that the plaintiff "must overcome the presumption of constitutionality beyond a reasonable doubt"; at page 69, we put it another way: "if any state of facts can reasonably be conceived to uphold the legislation including the classification made therein, the legislation will be upheld."

Other courts, faced with unconstitutional tort damage limits, have adhered to similar principles when reviewing those legislative actions. The Kansas Supreme Court put it well:

"This court is by the Constitution not made the critic of the legislature, but rather, the guardian of the Constitution." The constitutionality of a statute is presumed, and all doubts must be resolved in favor of its validity. Before a statute may be stricken down, it must clearly appear the statute violates the Constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done.

(Citations omitted.) *Kansas Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 340, 757 P.2d 251, 256–57 (1988).

■ To determine the extent of the right to trial by jury as it applies here, we must first identify the source of the constitutional protection. The seventh amendment to the United States Constitution does not apply through the Fourteenth Amendment to the states in civil trials. *Minneapolis & St. L. R.R. v. Bombolis*, 241 U.S. 211, 60 L. Ed. 961, 36 S. Ct. 595 (1916); *Walker v. Sauvinet*, 92 U.S. 90, 23 L. Ed. 678 (1876). The right to jury trial in civil proceedings is protected solely by the Washington Constitution in article 1, section 21. Therefore, the relevant analysis must follow state doctrine; our result is based entirely on adequate and independent state grounds.[4]

Article 1, section 21 states:

The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.

---

[4]Even if the federal constitution were to apply in this case, following the non-exclusive criteria set out in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986), we would still base our decision on the Washington Constitution.

█ Our basic rule in interpreting article 1, section 21 is to look to the right as it existed at the time of the constitution's adoption in 1889. *State ex rel. Goodner v. Speed,* 96 Wn.2d 838, 840, 640 P.2d 13, *cert. denied,* 459 U.S. 863 (1982); *In re Ellern,* 23 Wn.2d 219, 224, 160 P.2d 639 (1945); *State ex rel. Mullen v. Doherty,* 16 Wash. 382, 384–85, 47 P. 58 (1897). We have used this historical standard to determine the scope of the right as well as the causes of action to which it applies. These two issues, scope and the applicable causes of action, merit separate discussion.

*State ex rel. Mullen v. Doherty, supra,* being close in time to 1889, provides some contemporary insight on the scope issue. In *Mullen,* we cited section 248 of the Code of 1881, in force at the time of the constitution's passage, to determine the jury's role in the constitutional scheme: "either party shall have the right in an action at law, upon an issue of fact, to demand a trial by jury." *Mullen,* 16 Wash. at 385. Subsequent cases underscore the jury's fact finding province as the essence of the right's scope. *See, e.g., State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910); *In re Ellern, supra.*

█ At issue in the present case is whether the measure of damages is a question of fact within the jury's province. Our past decisions show that it is indeed. The constitutional nature of the jury's damage–finding function is underscored by *Baker v. Prewitt,* 3 Wash. Terr. 595, 19 P. 149 (1888). In that case, the territorial Supreme Court stated:

> Sections 204 and 289 of the [territorial] Code seem to require that in all actions for the assessment of damages the intervention of a jury must be had, save where a long account may authorize a referee, etc. This statute is mandatory, and we are satisfied that where the amount of damages is not fixed, agreed upon, or in some way liquidated, a jury must be called, unless expressly waived.

*Baker,* at 597–98. If our state constitution is to protect as inviolate the right to a jury trial at least to the extent as it

existed in 1889, then *Baker's* holding provides clear evidence that the jury's fact–finding function included the determination of damages. This evidence can only lead to the conclusion that our constitution, in article 1, section 21, protects the jury's role to determine damages.

The present case is not the first time we have recognized the constitutional nature of the jury's damage–determining role. In *James v. Robeck,* 79 Wn.2d 864, 869, 490 P.2d 878 (1971), we stated: "To the jury is consigned under the constitution the ultimate power to weigh the evidence and determine the facts—and the amount of damages in a particular case is an ultimate fact." *See also Dacres v. Oregon Ry. & Nav. Co.,* 1 Wash. 525, 20 P. 601 (1889) (Act of 1883, creating a scheme for determining the value of train–killed animals by appraisers, was unconstitutional because it denied the right to a jury trial); *Worthington v. Caldwell,* 65 Wn.2d 269, 273, 396 P.2d 797 (1964) ("Questions of damages should be decided by the jury . . ."); *Anderson v. Dalton,* 40 Wn.2d 894, 897, 246 P.2d 853, 35 A.L.R.2d 302 (1952); *Kellerher v. Porter,* 29 Wn.2d 650, 189 P.2d 223 (1948); *Walker v. McNeill,* 17 Wash. 582, 592–95, 50 P. 518 (1897).

The jury's role in determining noneconomic damages is perhaps even more essential. In *Bingaman v. Grays Harbor Comm'ty Hosp.,* 103 Wn.2d 831, 835, 699 P.2d 1230 (1985), the husband of a woman who died painfully 35 hours after giving birth, the result of medical malpractice, brought a wrongful death and survival action. The only issue before this court was whether the trial judge had properly reduced the jury's damage verdict of $412,000 for the woman's pain and suffering. In resolving the issue in the plaintiff's favor, we stated: "The determination of the amount of damages, *particularly in actions of this nature,* is primarily and peculiarly within the province of the jury, under proper instructions . . ." (Italics ours.) 103 Wn.2d at 835. *See also Lyster v. Metzger,* 68 Wn.2d 216, 224–25, 412 P.2d 340 (1966) (issue of damages, here primarily noneconomic, is within the jury's province); *Power v. Union Pac. R.R.,* 655

F.2d 1380, 1388 (9th Cir. 1981) (under Washington law, damages for loss of companionship determined by trier of fact).

United States Supreme Court jurisprudence on the Seventh Amendment's scope in civil trials, while not binding on the states, also provides some insight. In *Dimick v. Schiedt,* 293 U.S. 474, 79 L. Ed. 603, 55 S. Ct. 296, 95 A.L.R. 1150 (1935), the Court used historical analysis to determine whether the Seventh Amendment allowed additur. Citing cases and treatises dating from the time of the amendment's adoption, the Court found that determining damages, as an issue of fact, was very much within the jury's province and therefore protected by the Seventh Amendment. The Court also indicated that a judge should give more deference to a jury's verdict when the damages at issue concern a noneconomic loss. The Court quoted the English case of *Beardmore v. Carrington,* 2 Wils. 244, 248, 95 Eng. Rep. 790, 792 (K.B. 1764):

> ". . . There is great difference between cases of damages which [may] be certainly seen, and such as are ideal, as between *assumpsit, trespass for goods* where the sum and value may be measured, and actions of *imprisonment, malicious prosecution, slander and other personal torts,* where the damages are matter of opinion, speculation, ideal . . ."

293 U.S. at 479. The Court clarified the implications of the difference between these two classes of actions by quoting from J. Mayne, *Damages* (9th ed. 1920) at page 571: "'in cases where the amount of damages was uncertain their assessment was a matter so peculiarly within the province of the jury that the Court should not alter it.'" 293 U.S. at 480.

Respondents and certain amici contend that *Tull v. United States,* 481 U.S. 412, 95 L. Ed. 2d 365, 107 S. Ct. 1831 (1987), renders null the above analysis from *Dimick.* Using historical analysis, the *Tull* Court found that a defendant in an enforcement proceeding under the federal clean water act had the right to a jury trial but not to have

the jury determine the amount of the civil penalty. The distinction, however, between damages in a tort action and a civil penalty in a regulatory enforcement case is fundamental. Therefore, *Tull* is irrelevant on the issue before the court. Ultimately, however, because the Supreme Court's civil trial Seventh Amendment jurisprudence is not binding on the states, state courts can look on this area as educational rather than coercive: the federal cases may assist us, but they do not compel the result we reach. We find the noneconomic damages limit unconstitutional on adequate and independent state grounds. While we do this, we will examine federal cases which provide the most informative analysis on the issues we must decide. *Dimick* provides that analysis; *Tull* does not.

As our past decisions have shown, Washington has consistently looked to the jury to determine damages as a factual issue, especially in the area of noneconomic damages. This jury function receives constitutional protection from article 1, section 21.

The second issue we must address is the determination of which causes of action the right to trial by jury attaches to. We have held in the past that the right attaches to actions in which a jury was available at common law as of 1889 and to actions created by statutes in force at this same time allowing for a jury. *See, e.g., State ex rel. Mullen v. Doherty, supra* (as of 1889, quo warranto proceedings were not heard by a jury, therefore right did not attach); *In re Ellern, supra; see also* Trautman, *Right to Jury Trial in Washington—Present and Future,* 34 Wash. L. Rev. 401 (1959).

Amici in favor of respondents' position suggest that the right to a jury does not apply to causes of action that did not exist at the time of the constitution's adoption. A fundamental problem exists with this argument. If the right to a jury trial applies only to those *theories of recovery* accepted in 1889—rather than the types of actions that, at common law, were heard by a jury at that time—then the constitutional right to a jury will diminish over time. As a

method of construing a lasting constitutional right, this makes little sense.

As respondents themselves point out, this court stated in *Hunter v. North Mason High Sch. & Sch. Dist. 403,* 85 Wn.2d 810, 539 P.2d 845 (1975), that constitutional analysis is not completely frozen in time. It would defeat the intention of our constitution's framers to interpret an essential right so that it slowly withers away. An interpretation more consistent with the intended longevity of a constitutional right adapts the application of that right according to developments in the law over time. As long as the scope and nature of the right are adequately defined—and for that we can turn to a stricter historical analysis—a more flexible historical approach for determining when the right attaches will better achieve the intent of the framers.

A method of historical analysis used by the United States Supreme Court in *Tull v. United States, supra,* provides further insight. The *Tull* Court looked for proceedings analogous to the enforcement action under the federal clean water act which were contemporary with the Seventh Amendment's adoption. Finding that the common law proceeding of debt, in which the litigants had a right to a jury, was analogous to the clean water act enforcement action, the Court applied the Seventh Amendment right to the modern action. Without stretching the analogy as far as the Supreme Court did, it is logical to apply the more recent tort theories by analogy to the common law tort actions that existed in 1889. We note again that we reach our result today on adequate and independent state grounds. The holding in *Tull,* like all United States Supreme Court precedent in the civil trial area of the Seventh Amendment, is not binding on the states and merely serves as an example to us. It does not compel the result we reach.

Ultimately, there is not even an issue whether the right to a jury attaches to the Sofies' case. While they asserted "newer" tort theories in their complaint, the heart of the appellants' cause of action centered on negligence and willful or wanton misconduct resulting in personal injury. See

Plaintiff's Summons and Complaint, at 4–5. These basic tort theories are the same as those that existed at common law in 1889. *See, e.g., Columbia & P.S. R.R. v. Hawthorne,* 3 Wash. Terr. 353, 19 P. 25 (1888) (worker injured by falling pulley, defect known to employer), *rev'd on other grounds,* 144 U.S. 202 (1892); *Sayward v. Carlson,* 1 Wash. 29, 23 P. 830 (1890) (plaintiff, injured at work due to employer's negligence, while on the way to the bathroom, was not contributorially negligent). Subsequent cases and statutes have recognized newer theories of recovery within the framework of these basic tort actions, but the basic cause of action remains the same. Therefore, the right to trial by jury—with its scope as defined by historical analysis—remains attached here.

## III

Respondents argue that the Legislature has the power to alter the functions of civil trials, such alterations often affecting the role of the jury. They cite a number of cases in which our courts have upheld such changes against challenges based on the right to trial by jury. *See, e.g., State v. Mountain Timber Co.,* 75 Wash. 581, 135 P. 645 (1913), *aff'd,* 243 U.S. 219, 61 L. Ed. 685, 37 S. Ct. 260 (1917) (upholding the workers' compensation statute); *State ex rel. Clark v. Neterer,* 33 Wash. 535, 74 P. 668 (1903) (upholding constitutionality of fees and time limits for requesting jury); *Bellingham v. Hite,* 37 Wn.2d 652, 225 P.2d 895 (1950) (certain municipal cases may be tried without a jury provided there is right to jury trial on appeal); *Christie–Lambert Van & Storage Co. v. McLeod,* 39 Wn. App. 298, 693 P.2d 161 (1984) (upholding mandatory arbitration statute). Respondents argue that the Legislature may, in fact, do away with causes of action altogether, replacing them with procedures such as workers' compensation which, at the initial stage at least, do not allow for a jury at all. In short, respondents contend, the Legislature can determine the "law of recovery."

█ The Legislature has power to shape litigation. Such power, however, has limits: it must not encroach upon constitutional protections. In this case, by denying litigants an essential function of the jury, the Legislature has exceeded those limits.

A review of the decisions cited by respondents provides insight into the limits of legislative power. These decisions show that the Legislature cannot intrude into the jury's fact–finding function in civil actions, including the determination of the amount of damages.

In the case of workers' compensation, this court in *State v. Mountain Timber Co., supra,* did not engage in the historical analysis regarding the right to a jury trial. Our analysis instead centered on the State's police power to abolish causes of action and replace them with a mandatory industrial insurance scheme. Because the use of such power was done for the public health and welfare and a comprehensive scheme of compensation was inserted in its place, the abolition of the cause of action was not unconstitutional.[5] 75 Wash. at 583.

The United States Supreme Court, in affirming our decision, found that the statute did not violate the Seventh Amendment as it would apply to trials in federal court. The Court stated:

> So far as private rights of action are preserved, [the Seventh Amendment applies]; but with respect to those we find nothing in the act that excludes a trial by jury. As between employee and employer, the act abolishes all right of recovery in ordinary cases, and therefore leaves nothing to be tried by jury.

*Mountain Timber,* 243 U.S. at 235. In other words, if the cause of action is completely done away with, then the right to trial by jury becomes irrelevant. Since the right attaches to civil trials, there can be no right—and no constitutional violation—if no civil trial is available.

---

[5]We note here that while the Legislature has the power to abolish a civil cause of action, *Mountain Timber* establishes that such a legislative act must have its own independent constitutional foundation.

Respondents Eagle–Picher imply, without direct authority, that the Legislature's greater power to abolish causes of action includes the lesser power to alter jury functions, including that of determining damages. They cite the workers' compensation scheme as an example of the greater power. As part of this assertion, respondents refer to *Shea v. Olson,* 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998 (1936)—which upheld the automobile "guest statute"—for the proposition that "[a] person has no vested interest in any rule of the common law." 185 Wash. at 156.

While respondents cite *Shea* correctly, its holding is not applicable here. The scope of the right to trial by jury may be defined by the common law through a historical analysis, but the right itself is protected by the state constitution. As the United States Supreme Court stressed in *Dimick v. Schiedt,* 293 U.S. 474, 79 L. Ed. 603, 55 S. Ct. 296 (1935), the common law is a flexible body of doctrine, but fundamentally different from a constitutional provision which looks to the common law at a specific point in time for definition. 293 U.S. at 487. Constitutional protections are not directly subject to common law changes. Because of the constitutional nature of the right to jury trial, litigants have a continued interest in it—it simply cannot be removed by legislative action. As long as the cause of action continues to exist and the litigants have access to a jury, that right of access remains as long as the cause of action does. Otherwise, article 1, section 21 means nothing.

The other cases cited by respondents affect access to the jury in procedural ways. They do not deprive the jury of any of its essential functions. Washington's mandatory arbitration law does not supplant the jury in civil litigation. Rather, it provides for proceedings under a certain jurisdictional amount to be disposed of at a lesser expense to the parties and to the state. As made clear by the Court of Appeals in *Christie–Lambert Van & Storage Co. v. McLeod, supra,* the availability of a jury trial de novo to redetermine the arbitrator's conclusions preserved the right protected by article 1, section 21. The court stated:

[a]ll that is required is that the right of appeal for the purpose of presenting the issue to a jury must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable.

39 Wn. App. at 306, quoting *Smith Case,* 381 Pa. 223, 231, 112 A.2d 625 (1955). The court found that the procedures created in the Washington statute, notably placing on the losing party costs and fees in a frivolous appeal, were not an unreasonable burden on the parties and left the ultimate right to a jury intact.

The municipal trial at issue in *Bellingham v. Hite, supra,* was not unconstitutional for essentially the same reasons discussed in *Christie–Lambert.* The City of Bellingham gave a police judge jurisdiction to try certain municipal offenses—here driving while intoxicated. Like the mandatory arbitration plan, a jury trial de novo was available on appeal. Therefore, the scheme did not violate the right to trial by jury. *Bellingham v. Hite, supra* at 657.

The procedural directives at issue in *State ex rel. Clark v. Neterer, supra,* did not at all encroach upon the jury's province. In *Clark,* we found that article 1, section 21 allowed for waiver of a jury "'where the consent of the parties interested is given thereto". Such consent could be express or implied; therefore filing fees and deadlines, not being unreasonable, could direct the expression of consent within the bounds of the constitution. 33 Wash. at 541.

The issues in the preceding cases are fundamentally different from the legislative damage limit. Respondents do not contend that these previous cases directly infringed upon the jury's role to find the facts. Rather, the Legislature directed parties' access to the jury, often providing for more streamlined procedures to fulfill a state interest. At issue in the Sofies' case is a statute that directly changes the outcome of a jury determination. The statute operates by taking a jury's finding of fact and altering it to conform to a predetermined formula. Such a statutory operation is beyond the scope of the cases that respondents cite.

Respondents also argue that the trial court has the power to lower a jury's damages finding under the doctrine of remittitur, setting a precedent applicable to the legislative damage limit. While trial judges do have this power, remittitur functions very differently from the tort reform act.

First, remittitur is wholly within the power of the trial judge. Within the guidelines of the doctrine, the judge makes the legal conclusion that the jury's damage finding is too high. This judicial finding—arrived at with judicial care—is fundamentally different from a legislatively imposed "remittitur" that operates automatically. Appellants, indeed, argue that this legislative "remittitur" violates the doctrine of separation of powers. As we held in *Tacoma v. O'Brien,* 85 Wn.2d 266, 534 P.2d 114 (1975), any determination calling for a legal conclusion is constitutionally within the province of the judiciary, not the Legislature. Any legislative attempt to mandate legal conclusions would violate the separation of powers. 85 Wn.2d at 271. The judge's use of remittitur is, in effect, the result of a legal conclusion that the jury's finding of damages is unsupported by the evidence. The Legislature cannot make such case–by–case determinations. Therefore, the legislative damages limit is fundamentally different from the doctrine of remittitur. Although we do not decide the case on this basis, the limit may, indeed, violate the separation of powers as indicated by *O'Brien.*

Second, a judge can implement remittitur only under well developed constitutional guidelines. As discussed in cases like *Lyster v. Metzger,* 68 Wn.2d 216, 412 P.2d 340 (1966) and *Martin v. Foss Launch & Tug Co.,* 59 Wn.2d 302, 367 P.2d 981 (1962), the jury's constitutionally protected role is that of the finder of fact and part of this role is to determine the amount of damages in a given case. Because these matters are within the jury's province, there is a strong presumption in favor of their validity. This presumption is codified in statute: RCW 4.76.030. A judge can only reduce a jury's damages determination when it is, in light of this strong presumption, wholly unsupported by the

evidence, obviously motivated by passion or prejudice, or shocking to the court's conscience.

Third, the opposing party in cases of remittitur has the choice of accepting the reduction or seeking a new trial. RCW 4.76.030. The tort reform legislation does not allow parties this choice. All three of the discussed strictures surrounding the doctrine of remittitur are lacking in the tort reform act's damages limit. Indeed, the former and the latter operations are fundamentally different.[6]

Respondents also contend that the damages limit affects only the judgment as entered by the court, not the jury's finding of fact. This argument ignores the constitutional magnitude of the jury's fact–finding province, including its role to determine damages. Respondents essentially are saying that the right to trial by jury is not invaded if the jury is allowed to determine facts which go unheeded when the court issues its judgment. Such an argument pays lip service to the form of the jury but robs the institution of its function. This court will not construe constitutional rights in such a manner. As we once stated: "'The constitution deals with substance, not shadows. Its inhibition was leveled at the thing, not the name. . . . If the inhibition can be evaded by the form of the enactment, its insertion in the fundamental law was a vain and futile proceeding.'" *State v. Strasburg,* 60 Wash. 106, 116, 110 P. 1020 (1910), quoting *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325, 18 L. Ed. 356 (1866).

---

[6]If imposing a legislative limit on damages violates the jury's province, one may wonder whether the concept of trebling a jury's finding of damages, as in the Consumer Protection Act, does the same thing. Within the historical method of analysis used by this court, however, these two operations are different. A jury's role to determine damages in a common law action contemporaneous with the constitution's adoption is protected by article 1, section 21. A negligence action, including the later theories of recovery analogous to it, is such an action. The Consumer Protection Act, on the other hand, is a cause of action specifically created by the Legislature to fulfill a public policy. Part of that public policy is to allow treble damages where appropriate. But because the act is a legislatively created cause of action and was created well after 1889, under the historical analysis used by this court, it is outside of the strict purview of article 1, section 21.

■ Finally, the plain language of article 1, section 21 provides the most fundamental guidance: "The right of trial by jury shall remain inviolate". The term "inviolate" connotes deserving of the highest protection. *Webster's Third New International Dictionary* 1190 (1976), defines "inviolate" as "free from change or blemish: pure, unbroken . . . free from assault or trespass: untouched, intact . . ." Applied to the right to trial by jury, this language indicates that the right must remain the essential component of our legal system that it has always been. For such a right to remain inviolate, it must not diminish over time and must be protected from all assaults to its essential guaranties. In Washington, those guaranties include allowing the jury to determine the amount of damages in a civil case.

The potential impact of the constitution's language was not lost on the Legislature. During the floor debates on the tort reform act, the legislators were warned of the possible constitutional problems with their new legislation. Senator Talmadge stated:

> The Constitution of this state in Article I, Section 21, talks about the right to trial by jury being inviolate, not being something that we can invade as members of the Legislature, and when you start to put limitations on what juries can do, you have, in fact, invaded the province of the jury and have not preserved the right to a trial by jury inviolate.

Senate Journal, 49th Legislature (1986), at 449.

## IV

A number of other jurisdictions have stricken tort reform legislation that places a limit on the jury's ability to determine damages in a given case. A smaller number of courts have upheld such legislation against right–to–jury based challenges. The methods all of these courts have used are instructive through their similarities and differences to the present case and in their modes of analysis.

In *Boyd v. Bulala,* 647 F. Supp. 781 (W.D. Va. 1986), *reh'g denied,* 672 F. Supp. 915 (1987), a federal district court, applying both Virginia and federal constitutional

law, determined that Virginia's legislative damage limit—which placed a flat limit on noneconomic damages—was an unconstitutional violation of the right to trial by jury. The court developed insightful distinctions between what the Legislature can and cannot do:

> Unquestionably, the legislature may pass measures which affect the way a jury determines factual issues. The legislature may prescribe rules of procedure and evidence, create legal presumptions, allocate burdens of proof, and the like. Just as certainly, the legislature may abolish a common law right of action and, if it desires, replace it with a compensation scheme. The legislature may even make rules concerning the type of damages recoverable and the way in which damages are paid. But the legislature may not preempt a jury's findings on a factual issue which has properly been submitted to the jury.

(Footnotes omitted.) 647 F. Supp. at 789–90. To make matters clear, the *Bulala* court held that both the Seventh Amendment and the Virginia State Constitution provided the right to have a jury determine the extent of damages as well as liability. 647 F. Supp. at 788.

In *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 757 P.2d 251 (1988), the Kansas Supreme Court struck down its state's noneconomic damages limit—another flat limit—as violative of the Kansas constitution's protection of the right to trial by jury. After determining that the jury's function to determine damages was constitutionally protected, the court stated: "It would be illogical for this court to find that a jury, empaneled because monetary damages are sought, could not then fully determine the amount of damages suffered." 757 P.2d at 343. *See also Duren v. Suburban Comm'ty Hosp.,* 482 N.E.2d 1358 (Ohio C.P., Cuyahoga Cy. 1985) (striking limit on a number of constitutional grounds); *Smith v. Department of Ins.,* 507 So. 2d 1080 (Fla. 1987) (flat limit violates right to jury); *Lucas v. United States,* 757 S.W.2d 687 (Tex. 1988) (citing *Smith* and *Boyd,* finds limit on damages invades jury's

fact–finding province); Comment, *Challenging the Constitutionality of Noneconomic Damage Caps: Boyd v. Bulala and the Right to a Trial by Jury,* 24 Willamette L. Rev. 821 (1988).

Respondents contend that the limits in the above cases are distinguishable from the one in the Washington statute because they generally limited the damages to a fixed amount. Washington's limit, on the other hand, follows a formula based upon age. In terms of invading the province of the jury, however, the nature of the mechanism itself makes little difference. Whether the limit is fixed or follows a formula, if it restricts the jury's ability to reach its damages verdict, it invades the jury's province.

It is highly persuasive that in Kansas, Texas, Ohio, and Florida, states that have found the damages limit unconstitutional, the operative language of the right to jury trial provisions in those states' constitutions is nearly identical to our own. *See* Kan. Const. Bill of Rights § 5 ("The right of trial by jury shall be inviolate"); Tex. Const. art. 1, § 15 ("The right of trial by jury shall remain inviolate"); Ohio Const. art. 1, § 5 ("The right of trial by jury shall be inviolate"); Fla. Const. art. 1, § 22 ("The right of trial by jury shall be secure to all and remain inviolate").

Cases upholding damage limits either have not analyzed the jury's role in the matter or have not engaged in the historical constitutional analysis used by this court in construing the right to a jury. Two cases from California cited by respondents are essentially irrelevant to the jury issue here. In *Fein v. Permanente Med. Group,* 38 Cal. 3d 137, 695 P.2d 665, 211 Cal. Rptr. 368, *appeal dismissed,* 474 U.S. 892, 88 L. Ed. 2d 215, 106 S. Ct. 214 (1985), the California Supreme Court upheld its state's damage limit provision in medical malpractice cases. In that case, however, the issue of whether the limit infringed on the right to trial by jury was not discussed. The court upheld the limit on due process and equal protection grounds. However, in *American Bank & Trust Co. v. Community Hosp. of Los Gatos–Saratoga, Inc.,* 36 Cal. 3d 359, 683 P.2d 670, 204 Cal. Rptr.

671 (1984), the California court upheld the same act's provision for periodic payment of "future damages" against a challenge based on the right to jury trial. Based on a historical analysis much less detailed than the one employed by this court, the California court found that the periodic payment provision did not represent impairment of the substantial features of a jury trial. 683 P.2d at 680. The case, however, is fundamentally different from the one now before us. It did not deal with the ultimate issue of directly invading the jury's fact–finding province.

In *Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 404 N.E.2d 585 (1980), the Indiana Supreme Court upheld a flat limit on damages against challenges that it violated the right to a jury. In reaching its conclusion, the court cited the legislature's power to restrict causes of action through statutes of limitation and procedural rules. From these legislative powers, the court concluded: "It is the policy of this Act that recoveries be limited to $500,000, and to this extent the right to have the jury assess the damages is available." 273 Ind. at 401. Essentially, although it gave no clear reasons, the Indiana court did not recognize the jury's role to determine damages. It is also notable that the court did not undertake any historical analysis to reach its conclusion. This lack of analysis minimizes the impact of the similarity between the Indiana constitution's jury provision and our own. *See also Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657 (1977) (mandatory prerequisite submission of malpractice claims to panel does not violate right to jury because jury ultimately is the finder of fact).

The weight of authority from other states, both numerically and persuasively, supports the conclusion that Washington's damages limit violates the right to trial by jury.

V

The dissenters raise several points to which we now respond. Justice Dolliver's dissent, at page 677, states that "[a] moment's reflection" will reveal that the real issue in this case is not whether the determination of damages is a

question of fact within the jury's province but whether this function "extends to the remedy phase." This statement simply recasts the formulation of a principle in an attempt to make it into something else. The issue must remain an inquiry into what is contained within the jury's fact–finding province. Because that province includes finding damages, as a matter of course the remedy phase is affected, just as any finding of fact can affect a trial's outcome.

Justice Dolliver cites with approval the recent case of *Etheridge v. Medical Ctr. Hosps.,* __ Va. __, 376 S.E.2d 525 (1989), but ignores the greater number of cases from other jurisdictions that support our position. In making this oversight, Justice Dolliver also omits the fact that four courts whose decisions support our holding—Texas, Kansas, Ohio, and Florida—base their decisions on state constitutions with operative language nearly identical to our own. Moreover, the Virginia Constitution, upon which *Etheridge* is based, contains language quite different from ours or of the other states mentioned above. The *Etheridge* opinion is also poorly reasoned. After conceding that the "jury's fact–finding function extends to the assessment of damages", the court finds that a "trial court applies the remedy's limitation only *after* the jury has fulfilled its fact–finding function." *Etheridge,* 376 S.E.2d at 529. Thus, supposedly, the limitation does not impinge on the jury's function. *Etheridge,* 376 S.E.2d at 529.

As this court stated in *State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910), a case which Justice Dolliver fails to mention: "'The constitution deals with substance, not shadows. Its inhibition was leveled at the thing, not the name. . . .'" 60 Wash. at 116, quoting *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325, 18 L. Ed. 356 (1866). In other words, a constitutional protection cannot be bypassed by allowing it to exist in form but letting it have no effect in function. The *Strasburg* principle is the undoing of *Etheridge*'s reasoning.

*Strasburg* also deflates Justice Dolliver's accusation, at page 683, that this court's "entire analysis" boils down to a

few sentences "with no authority cited." We cite *Strasburg* plainly enough. The impact of *Strasburg* on this case is worth repeating: because the jury's province includes determining damages, this determination must affect the remedy. Otherwise, the constitutional protection is all shadow and no substance.

Justice Dolliver's dissent also attempts to construct an issue out of a trial judge's power to reduce the amount of a jury's award. As we state above, the remittitur doctrine is part and parcel of the constitutional right to a jury. Justice Dolliver's assertion at page 681 that the Code of 1881 contained no provision for remittitur—apparently implying that the doctrine did not apply to the right to a jury at the time of our constitution's adoption—ignores the fact that remittitur existed at common law. *Walker v. McNeill,* 17 Wash. 582, 50 P. 518 (1897), cited by Justice Dolliver for its act of reducing excessive damages, is a near–contemporary example. For a discussion of the common law roots of remittitur, *see Dimick v. Schiedt,* 239 U.S. 474, 79 L. Ed. 603, 55 S. Ct. 296, 95 A.L.R. 1150 (1935). In his repeated reference to remittitur, Justice Dolliver fails to mention that this function is solely within the province of the trial judge—that it is entirely separate from a legislative operation which reduces a jury's damages finding. In so doing, he does not address the separation of powers problems implicit in his conclusion.

Contrary to the assertion in Chief Justice Callow's dissent at page 670, this court does not hold that today's juries are constitutionally bound to "determine the same issues which were determined by juries in 1889." Rather, we use historical evidence as an aid to determine what the drafters meant by keeping the right to a jury trial "inviolate." We agree with Chief Justice Callow, and held in *Hunter v. North Mason High Sch. & Sch. Dist. 403,* 85 Wn.2d 810, 539 P.2d 845 (1975), that the construction of a constitutional protection is not frozen in time. The contemporary relevance of the provision in light of changes in the law, the

construction given to it over time as well as the construction given to it immediately after its adoption—by jurists intimate with the drafting of the provision—are also tools to divine its contours. All of these factors point to the constitutional protection of the jury's function to determine damages. Thus, Chief Justice Callow's reference to "no authority" and "no sound policy reasons" applies to something that we do not hold.[7]

Perhaps the most serious problem with Chief Justice Callow's dissent is that it fails to address the constitutional language itself: "The right of trial by jury shall remain inviolate". While Chief Justice Callow agrees that the right does exist, he provides no mechanism for determining the content of the right and for protecting that content. His construction is open to the form–over–content problems this court identified in *State v. Strasburg, supra.* The word "inviolate" carries with it a strong command: the right— as it existed in the minds of the framers and as it is relevant today—must exist "free from assault or trespass: untouched, intact . . ." *Webster's Third New International Dictionary* 1190 (1976).

The dissenters make much out of their citation to *Tull v. United States,* 481 U.S. 412, 95 L. Ed. 2d 365, 107 S. Ct. 1831 (1987). As we state above, the conclusion in *Tull* has no bearing on this court because we base our decision on adequate and independent state grounds. Since 1889, Washington's jurisprudence on the right to a jury in civil trials has always been based on the state constitution. *Tull* and *Dimick v. Schiedt, supra,* may provide material for our analysis, but they do not direct us.

Chief Justice Callow's advocation of *Tull* conceptually distorts the rule we developed in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986), which in turn relied on the

---

[7]Nowhere do we advocate a wholesale adoption of the Code of 1881. To make such a claim misconstrues the techniques of state constitutional interpretation. The legislative process of passing statutes differs markedly from that of drafting a constitution. The constitution's lasting and foundational nature must be respected when we undertake the task of interpreting it.

concurring opinion of Justice Handler in the New Jersey decision of *State v. Hunt,* 91 N.J. 338, 450 A.2d 952 (1982). Chief Justice Callow relies on *Gunwall* and *Hunt* to support his implication that this court should defer to Supreme Court interpretation of a comparable federal provision unless an analysis of the six *Gunwall* criteria indicate that we should take an independent course. Callow, C.J., dissenting, at 673.

This implication is contrary to the reasoning of Justice Handler and was specifically rejected by him in *Hunt.* In footnote 3 of his opinion, he stated, "To the extent that Justice Pashman suggests in his concurring opinion that this approach establishes a presumption in favor of federal constitutional interpretations, *supra* at 355, no decision of this Court has recognized such a presumption, and nothing in this opinion or in the majority opinion, as I read it, calls for or encourages the establishment of such a presumption." *Hunt,* at 367 n.3.

After criticism that the *Gunwall* criteria could be misinterpreted to support the view now espoused by the dissent,[8] this court clarified the test in *State v. Wethered,* 110 Wn.2d 466, 472, 755 P.2d 797 (1988). In *Wethered,* we reemphasized the statement that the *Gunwall* factors were nonexclusive and added that they were to be used as interpretive principles of our state constitution.

At any rate, *Tull* does not even apply to civil damages actions. The second opinion in *Boyd v. Bulala,* 672 F. Supp. 915 (W.D. Va. 1987), which the dissenters fail to cite, reaffirmed that court's previous holding that the Virginia damages limit violated the Seventh Amendment, stating: "Unlike the assessment of civil penalties discussed in *Tull, supra,* the assessment of damages has always been a matter 'peculiarly within the province of the jury.'" 672 F. Supp. at 920, quoting *Virginia Mid. R.R. v. White,* 84 Va. 498, 508, 5 S.E. 573 (1888). *Boyd* has not been overruled.

---

[8]*See* Note, *Federalism, Uniformity, and the State Constitution—State v. Gunwall,* 62 Wash. L. Rev. 569 (1987).

To his credit, Justice Dolliver concedes that our State's jurisprudence contains cases squarely stating that a jury's role to determine damages is of constitutional proportions. At page 681 he admits that *James v. Robeck,* 79 Wn.2d 864, 490 P.2d 878 (1971), "does describe damages determination as a constitutionally consigned jury function." Justice Dolliver makes this concession because he must. The principle in *James* is inescapable: that case has not been limited or overruled.

Justice Dolliver's treatment of other Washington precedent attempts to limit the cases to their facts and ignore the principle that underlies them. For example, *Baker v. Prewitt,* 3 Wash. Terr. 595, 19 P. 149 (1888), did hold, as his dissent suggests, that a jury determined damages in default judgments at the time our constitution was adopted. Nonetheless, the underlying principle in *Baker* is that a jury determines damages, period. *Baker* links sections 204 and 289 of the Code of 1881, which outline the jury's fact–finding function generally and its role in determining damages specifically in default actions, respectively. If the court had intended to limit its holding to its facts, it would not have cited to section 204 and it would not have stated: "in *all* actions for the assessment of damages the intervention of a jury must be had . . ." (Italics ours.) 3 Wash. Terr. at 597. Although *Dacres v. Oregon Ry. & Nav. Co.,* 1 Wash. 525, 20 P. 601 (1889), does base its holding on the Seventh Amendment, that does not diminish that case's contemporary relevance for construing our state's constitutional provision. What we are concerned with is the conception of the scope of the right to a jury trial at the time of our constitution's adoption, not how United States Supreme Court precedent 98 years after that case affects the territorial court's conclusion.

On page 683, Justice Dolliver's dissent claims:

Contrary to the majority's bold conclusion, this court has never constitutionalized the jury's right to determine damages. Even conceding this point, however, there is no

precedent for extending the scope of this right to the remedy phase.

This statement ignores the plain language of *James* as well as the impact of *Strasburg.* Indeed, this argument can only be made by ignoring or mischaracterizing these cases.

Justice Dolliver also misconstrues the nature of the Legislature's power to create and eliminate causes of action and the attachment of the jury right to these actions. When the Legislature abolishes a cause of action, it does so explicitly, as it did when it created the workers' compensation scheme. Thus, Justice Dolliver's claim, on page 686, that the Legislature has "eliminated, in effect, any cause of action in which the damages are above the amount allowed in the act", cannot be taken seriously. If RCW 4.56.250 "partially" abolished a cause of action, then the Legislature certainly wasn't aware of it. Only if this court saw itself as a super–Legislature could we make up such legislative acts after the fact.

The dissenters' arguments regarding comparative negligence in product liability actions, punitive damages, and treble damages are unpersuasive. The absence of punitive damages in our state is a reflection of policies contemporary with our constitution's adoption. As with remittitur, this is incorporated into the jury right. *Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 25 P. 1072 (1891), in abolishing punitive damages, did not discuss the impact of Const. art. 1, § 21. That the constitutional argument was neither made nor considered suggests a contemporary understanding that awarding punitive damages was not one of the essential jury functions envisioned by the framers to remain "inviolate." *Spokane Truck*'s treatment of the jury question contrasts markedly with the clear statements in cases such as *James v. Robeck, supra.* Therefore, it does not provide the constitutional evidence provided in the cases upon which we rely. Additionally, the nonconstitutional status of punitive damages may have been intimately understood by the judges on the court at that time, three of whom had served as drafters at the constitutional convention 2 years earlier.

*See Journal of the Washington State Constitutional Convention 1889,* at 465, 470, 485 (B. Rosenow ed. 1962); 2 Wash. iii (1892) (list of judges).

Justice Dolliver's discussion, on pages 684–85, of the effect of RCW 4.22.005 on *Seay v. Chrysler Corp.,* 93 Wn.2d 319, 609 P.2d 1382 (1980), focuses only on the results of the operation, not the process of it. It is entirely within the Legislature's power to define parameters of a cause of action and prescribe factors to take into consideration in determining liability. This is fundamentally different from directly predetermining the limits of a jury's fact–finding powers in relevant issues, which offends the constitution.

As for the "gratuitous holding" regarding the Consumer Protection Act discussed by Justice Dolliver's dissent at page 687, we have not reached such a fundamental conclusion. We are unable to because the Consumer Protection Act is not an issue in this case. We cannot decide cases not before us. Further, Chief Justice Callow's contrasting suggestion that our holding today renders the Consumer Protection Act unconstitutional shows again that this court is unable to speculate on cases not presented and which have not been adequately briefed.

While the dissenting opinions make interesting reading, they do not alter the fact that we have never overruled *James v. Robeck, supra. James,* quite simply, describes damages determination as a constitutionally consigned jury function. As for other states faced with similar issues, all but one with constitutional provisions similar to ours have stricken damages limits as violative of the right to a jury.

## VI

Respondents contend that the trial judge erred in the following ways: applying joint and several liability instead of apportionment of fault, allowing juror misconduct, permitting cumulative testimony, excluding a key witness, and refusing to grant motions for remittitur or a new trial. We find no merit in these arguments.

■ As for the issues of juror misconduct, cumulative testimony, witness exclusion and motions for remittitur, these matters are committed to the trial court's discretion. This court will not reverse trial court rulings in these areas unless we see a clear abuse of discretion. *See, e.g., Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651, 379 P.2d 918 (1962) (juror misconduct); *Braack v. Bailey,* 32 Wn.2d 60, 62, 200 P.2d 525 (1948) (cumulative testimony); *Maehren v. Seattle,* 92 Wn.2d 480, 488, 599 P.2d 1255 (1979) (admission or refusal of testimony), *cert. denied,* 452 U.S. 938 (1981). A judge abuses his discretion when no reasonable judge would have reached the same conclusion. *Byerly v. Madsen,* 41 Wn. App. 495, 704 P.2d 1236, *review denied,* 104 Wn.2d 1021 (1985). With regard to remittitur, not only is this matter within the trial judge's discretion, but the judge must, under our state constitution, give great deference to the jury's finding of fact, including the determination of damages. *See, e.g., Bingaman v. Grays Harbor Comm'ty Hosp.,* 103 Wn.2d 831, 699 P.2d 1230 (1985). Because the trial judge in the present case did not come close to abusing his discretion, petitioners' arguments here are without merit.

Respondents point out that the trial judge instructed the jury, under RCW 4.22.070(3), to apply joint and several liability to the defendants. This statutory provision operates as an exception to the Legislature's restriction of joint and several liability in the 1986 tort reform act. RCW 4.22.070-(3)(a) states:

> Nothing in this section affects any cause of action relating to hazardous wastes or substances or solid waste disposal sites.

The trial judge interpreted the exception to include causes of action relating to asbestos because the judge found—and respondents conceded—that asbestos is a "hazardous substance."

Respondents argue that the trial judge read the term "substances" out of context. They contend that the statute, when read as a whole, applies only to problems relating to

hazardous waste and environmental pollution. They further assert, through citations to floor debates in the Senate during the bill's passage, that the exception was intended to avoid interference with the Legislature's proposed "superfund" toxic cleanup bill. In support of these assertions, they cite an early version of the exception:

> The defendants shall be jointly and severally liable if the cause of action involves a violation of any state or local law relating to solid wastes, hazardous wastes or substances, air, water, or high or low level radioactive wastes or substances. If legislation is enacted in 1986 creating joint and several liability for causes of action relating to solid wastes or hazardous wastes or substances, then this subsection shall be null and void.

Senate Journal, 49th Legislature (1986), at 467. Respondents quote further remarks from the amendment's sponsor, Senator Talmadge, that the amendment was indeed intended to address environmental issues. Senate Journal, *supra*. In relation to their interpretation, respondents contend that the exception in RCW 4.22.070 was intended to apply to causes of action under RCW 70.105 (Hazardous Waste Management Act).

In interpreting a statute, this court looks first to the plain and ordinary meaning of the words used by the Legislature. *State v. Theilken,* 102 Wn.2d 271, 684 P.2d 709 (1984); *Hewson Constr., Inc. v. Reintree Corp.,* 101 Wn.2d 819, 685 P.2d 1062 (1984). Regardless of respondents' arguments about context, the simple use of the word "or" in the statute at issue indicates that the exception operates to each of the nouns in the sentence. That includes "hazardous substances," wherever they may be found. If the Legislature intended the exception to be limited to environmental litigation, it would or should have stated so explicitly.

Respondents' reliance on legislative history only appears to show that the Legislature intended a broader application for RCW 4.22.070(3)(a). The remarkable differences between the early and final versions of the statute further

indicate that the exception was not limited to environmental cases. In addition, the words "any cause of action" in section (3)(a) mean, in simple and plain terms, that the exception is not limited to any specific RCW section. Based on the foregoing analysis, then, the trial judge properly interpreted this statute.

The real issue here, however, is not a choice between joint and several liability or apportionment of fault, as posited by respondents. It is, rather, a choice between joint and several liability for the named defendants alone or joint and several liability for named defendants along with possible liability for unnamed defendants as well. RCW 4.22.070(1)(b) retains joint and several liability against named defendants in cases where the plaintiff is not at fault:

> If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimants total damages.

The special verdict form from the trial shows that the jury found the plaintiffs in this case not at fault. Clerk's Papers, at 393. In addition, defendants had alleged at trial that other, unnamed entities were also at fault. Because the exception in RCW 4.22.070(3)(a) applies, the defendants in this case are liable jointly and severally for the entire amount regardless of the possible relative fault between them and unnamed entities.

## VII

For the reasons we have developed above, the limit on noneconomic damages in RCW 4.56.250 is unconstitutional. This damages limit, then, is no longer operative. Because the trial court specifically found that the jury's award of damages was reasonable and supported by the evidence, we reinstate that award.

BRACHTENBACH, DORE, PEARSON, and SMITH, JJ., concur.

ANDERSEN, J.—I concur on the basis that RCW 4.56.250 violates Const. art. 1, § 21.

CALLOW, C.J. (dissenting)—I disagree with the majority's determination that Const. art. 1, § 21 affords a tort litigant an absolute right to have a jury determine noneconomic damages in a tort action. This constitutional provision should be interpreted to require only that a jury determine such facts as the Legislature may choose to incorporate into a cause of action.

The majority's right–to–jury argument can be stated as two propositions. First, the majority asserts that a litigant has a constitutional right to trial by jury with respect to all actions in which a jury was available at the time the constitution was adopted. *See, e.g., State ex rel. Goodner v. Speed,* 96 Wn.2d 838, 840, 640 P.2d 13, *cert. denied,* 459 U.S. 863 (1982). A jury was available in negligence actions at the time the constitution was adopted. *See, e.g., Sayward v. Carlson,* 1 Wash. 29, 23 P. 830 (1890). Because the plaintiff's action sounds primarily in negligence, plaintiff is entitled to a jury trial. I agree.

Second, the majority asserts that in such cases a litigant has the constitutional right to have the jury determine the same issues which were determined by juries in 1889. Majority, at 645. Because juries determined the measure of damages, including noneconomic damages, in all civil actions in 1889, the majority concludes that a contemporary litigant has the constitutional right to have a jury determine the measure of noneconomic damages. Majority, at 646. I disagree.

The majority offers *no authority* and *no sound policy reasons* in support of the premise that our constitution requires contemporary juries to determine all issues which juries determined in 1889. In fact, this court has never adopted a historical standard to determine the "scope" of the right to a jury trial, and there are good reasons why we should not do so now.

Most of the majority's cited authority and discussion focuses on the minor premise—that the amount of damages have historically been determined by a jury.[9] Thus, *Baker v. Prewitt,* 3 Wash. Terr. 595, 19 P. 149 (1888), does show that in 1889 "the jury's fact-finding function included the determination of damages." Majority, at 646. Similarly, the court in *James v. Robeck,* 79 Wn.2d 864, 869, 490 P.2d 878 (1971) spoke historical truth when it said that "the amount of damages in a particular case is an ultimate fact." Majority, at 646. In *Bingaman v. Grays Harbor Comm'ty Hosp.,* 103 Wn.2d 831, 835, 699 P.2d 1230 (1985), we held that an appellate court could not alter the jury's determination of noneconomic damages, because the determination of noneconomic damages had been left to the discretion of the jury. *See also Dimick v. Schiedt,* 293 U.S. 474, 79 L. Ed. 603, 55 S. Ct. 296, 95 A.L.R. 1150 (1935).

These cases prove that juries historically have determined the amount of damages, including noneconomic damages, in civil actions. But they only prove that juries *historically* have determined noneconomic damages, not that juries *constitutionally* must do so. The majority errs by equating historical fact with constitutional necessity.

No case cited by the majority shows that this court has ever used a strict historical standard for determining the scope of the right to a jury trial. For example, the majority states that *State ex rel. Mullen v. Doherty,* 16 Wash. 382, 384–85, 47 P. 58 (1897) provides "contemporary insight on the scope issue." Majority opinion, at 645. In *Mullen,* the court cited section 248 of the Code of 1881 to show that at the time the constitution was adopted, the right to a jury trial extended only to "actions at law." Because a quo warranto proceeding is not an action at law, the court determined that the defendant had no right to a jury trial. *Mullen,* at 385. *Mullen* is merely an early example in which

---

[9]I note that even in 1889, juries did not have unlimited discretion to award economic damages. Section 717 of the Territorial Code of 1881 limited to $5,000 the damages a jury could award in a wrongful death action.

the court used a historical standard to determine whether the right to a jury trial attached *at all*. It simply does not address the "scope" issue. Similarly, the court in *In re Ellern*, 23 Wn.2d 219, 160 P.2d 639 (1945) held that the right to a jury trial attached to insanity commitment proceedings because a jury heard such proceedings in 1889. *Ellern* does not address the "scope" issue.

The only case the majority cites which directly addresses the "scope" issue is *State v. Strasburg*, 60 Wash. 106, 110 P. 1020 (1910). In *Strasburg*, six judges held that a criminal defendant had a due process right to bring the question of his sanity before a jury. Because this right antedated the adoption of the constitution, three judges found that a statute which purported to deny the jury the opportunity to consider this issue also violated Const. art. 1, § 21. The plurality in *Strasburg* thus determined that the right to a jury trial included the right to have the jury determine the issue of the defendant's sanity.

*Strasburg* is distinguishable from the case before us. In *Strasburg*, the defendant had an *independent* constitutional right to have his sanity made a factual issue. Const. art. 1, § 21 therefore required that the factual issue be determined by the jury. In the present case, however, the plaintiff has *no independent* constitutional right to have the determination of noneconomic damages be a factual issue. Accordingly, the plaintiff has no Const. art. 1, § 21 right to have the amount of noneconomic damages determined by a jury.

The majority errs by summarily dismissing *Tull v. United States*, 481 U.S. 412, 95 L. Ed. 2d 365, 107 S. Ct. 1831 (1987). The majority dismisses *Tull* on the grounds that the Seventh Amendment does not apply to the states. Majority, at 648. I agree that the federal supremacy clause does not compel us to apply *Tull* to this case. However, "[t]he opinions of the Supreme Court, while not controlling on state courts construing their own constitutions, are nevertheless important guides on the subjects which they squarely address." *State v. Gunwall*, 106 Wn.2d 54, 60–61,

720 P.2d 808 (1986), quoting *State v. Hunt*, 91 N.J. 338, 363, 450 A.2d 952 (1982) (Handler, J., concurring).

Before this court will determine whether our State constitution affords wider protection than the United States Constitution, a litigant must adequately present and argue the issues to us, using at a minimum the criteria set out in *Gunwall*. *State v. Wethered*, 110 Wn.2d 466, 472–73, 755 P.2d 797 (1988). However, the majority today interprets Const. art. 1, § 21 to afford wider protection than the Seventh Amendment without presenting any reasons for doing so. Majority, at 644–45; footnote 4. We articulated *Gunwall*'s interpretive criteria precisely in order to avoid this "all sail, no anchor" approach to state constitutional law. *Gunwall*, 106 Wn.2d at 60.

In *Tull*, the Court concluded that the common law right of trial by jury did not include the right to have a jury determine the amount of the remedy. Therefore, the Court held that the Seventh Amendment permitted Congress to assign the determination of the amount of a civil penalty to the trial judge. *Tull*, 481 U.S. at 426–27. The analysis set forth in *Tull* bears directly on the "scope" issue.[10] We should not ignore *Tull*, and we cannot legitimately do so.

Because the majority chooses to disregard *Tull*, the applicability of the tort reform act may now depend upon the forum, federal or state, in which an action is heard. The Seventh Amendment controls federal courts sitting in diversity cases. *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*,

---

[10]The majority cites *Boyd v. Bulala*, 672 F.2d 915 (W.D. Va. 1987) for the proposition that "*Tull* does not even apply to civil damages actions" (majority, at 663), as if the opinion of a single federal district judge were dispositive of the issue. Compare *Franklin v. Mazda Motor Corp.*, 704 F. Supp. 1325 (D. Md. 1989) (Maryland cap on economic damages does not violate the Seventh Amendment).

In fact, the court in *Boyd* acknowledged that *Tull* "provides some guidance." 672 F. Supp. at 920. The court ultimately determined that the Seventh Amendment required juries to determine that the right to trial by jury guaranteed by the Virginia Constitution is *stronger* than the right secured by the Seventh Amendment. 672 F. Supp. at 922. The Virginia Supreme Court subsequently held that the Virginia Constitution does not require juries to determine the amount of damages. *Etheridge v. Medical Ctr. Hosps.*, ___ Va. ___, 376 S.E.2d 525 (1989). *Boyd*'s predictive value is weak.

356 U.S. 525, 2 L. Ed. 2d 953, 78 S. Ct. 893 (1958). Because the Seventh Amendment does not require that a jury determine the amount of the remedy, *Tull,* the tort reform act does not violate federal right–to–jury guaranties and therefore may still apply to tort litigation in federal court. Compare *Boyd v. Bulala,* 647 F. Supp. 781, 788 (W.D. Va. 1986), *reconsideration denied,* 672 F. Supp. 915 (W.D. Va. 1987); *Etheridge v. Medical Ctr. Hosps.,* ___ Va. ___, 376 S.E.2d 525 (1989). Even in our state courts, the act will still apply to litigants who waive their right to a jury trial, intentionally or otherwise. *See* CR 38(d).

Other absurd results will necessarily follow from the adoption of a historical standard for determining the "scope" of the right to a jury trial. For example, the majority cites *Baker v. Prewitt,* 3 Wash. Terr. 595, 19 P. 149 (1888), to establish the fact that juries in 1889 determined the amount of damages in all civil actions. Majority opinion, at 645–46. However, *Baker* also holds that a jury must determine the amount of damages before a court can enter a *default* judgment. 3 Wash. Terr. at 598. *Baker*'s holding was in effect overruled by *Johansen v. United Truck Lines,* 62 Wn.2d 437, 383 P.2d 512 (1963). However, because the majority holds that a jury must determine all issues which juries determined in 1889, a default judgment entered at variance with this obsolete procedure logically violates a defendant's Const. art. 1, § 21 right to a jury trial.

The majority's analysis also inexorably results in a Const. art. 1, § 21 right to have the jury assess punitive damages in wrongful death actions. The Territorial Code of 1881, § 8, provides in part that: "In every [wrongful death] action the jury may give such damages, pecuniary *or exemplary,* as, under all the circumstances of the case may to them seem just." (Italics mine.) *See also Graetz v. McKenzie,* 3 Wash. 194, 28 P. 331 (1891). Because juries had the right to award punitive damages in wrongful death actions in 1889, Const. art. 1, § 21 will now require that juries be permitted to determine appropriate punitive damage awards in wrongful death actions today.

Indeed, this court did not generally prohibit punitive damage awards until 1891. *Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 25 P. 1072 (1891). In *Spokane Truck,* the court clearly indicated that it was rejecting the majority common law rule which permitted the jury to award such damages.[11] 2 Wash. at 50–51. If the drafters of our state constitution intended Const. art. 1, § 21 to perpetuate a litigant's common law right to have a jury determine the amount of noneconomic damages, surely they also intended to perpetuate a litigant's common law right to have the jury determine appropriate punitive damages.

While the majority's holding resurrects much obsolete remedy law (which I submit is ill advised), the holding (if consistent) should also eliminate other more recent provisions. For example, the majority asserts that the Consumer Protection Act's damages provisions are not affected by its analysis because they are part of "a cause of action specifically created by the Legislature to fulfill a public policy." Footnote 6. However, the Legislature also specifically created the tort reform act's damage provisions to further a public policy. Laws of 1986, ch. 305, § 100. Under the majority's "flexible historical approach" (majority, at 649), the right to a jury trial would presumably attach to Consumer Protection Act actions because they are analogous to actions heard by a jury at common law, such as fraud, misrepresentation, or deceit. Therefore, if consistently applied, the majority's analysis renders the CPA's treble damages provisions unconstitutional.

For these reasons, I believe the majority errs by adopting a historical standard for determining the "scope" of the right to a jury trial. As the majority acknowledges at page 649, the constitution is not a static document and constitutional analysis should not be completely frozen in time.

---

[11]The majority attempts to distinguish the punitive damage issue by asserting that "the nonconstitutional status of punitive damages may have been intimately understood by the judges on the court [in 1891], three of whom had served as drafters at the constitutional convention 2 years earlier." Majority, at 665. I submit that this is speculation.

*Hunter v. North Mason High Sch. & Sch. Dist. 403,* 85 Wn.2d 810, 539 P.2d 845 (1975). This is *exactly* what the majority's historical standard does.

I would apply a more flexible standard to determine the scope of the right to trial by jury. I would hold that Const. art. 1, § 21 does not restrict the power of the Legislature to alter or amend the elements of a common law cause of action. *Tull; see also Shea v. Olson,* 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998 (1936). Rather, this provision serves to check the power of the judiciary, by preventing a judge from substituting his or her judgment for that of the jury. *Bingaman; James.* Compare Const. art. 4, § 16. Accordingly, I would hold that the challenged provisions of the tort reform act do not violate Const. art. 1, § 21.

DOLLIVER, J., concurs with CALLOW, C.J.

DOLLIVER, J. (dissenting)—The majority finds RCW 4.56.250 violates Const. art. 1, § 21 ("[t]he right of trial by jury shall remain inviolate") and thus is unconstitutional. While I might agree with the public policy result crafted by the majority, I cannot agree the statute violates plaintiffs' right to trial by jury and, so, I dissent. The majority limits its discussion to the trial by jury question and refuses to consider the equal protection and due process issues raised by plaintiffs. Since I also believe the trial by jury issue is the most important issue before the court and further believe RCW 4.56.250 does not violate either equal protection or due process, I too confine my dissent to the issue of trial by jury.

I begin by referring to the test this court must use in determining whether a statute is constitutional. The majority correctly cites *Shea v. Olson,* 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998 (1936) in delineating the standard. Its paraphrase of the holding in *Shea,* however, tends to mislead. The majority states:

In matters of economic legislation [a limitation not expressed in *Shea*], we follow the rule giving every reasonable presumption in favor of the constitutionality of the law or ordinance.

Majority, at 642–43. The rule is not, however, as indicated by the majority, "every reasonable presumption". As the court in *Shea* goes on to state: "[T]he rule in this state is that the court will not declare a law unconstitutional unless its invalidity is so apparent as to leave no reasonable doubt on the subject." *Shea,* at 152. We affirmed this test in a recent case: "A statute should not be declared unconstitutional unless it appears unconstitutional beyond a reasonable doubt." *Haberman v. WPPSS,* 109 Wn.2d 107, 139, 744 P.2d 1032, 750 P.2d 254 (1987). The test is not that there is a reasonable presumption to uphold legislation against constitutional attack. Rather, any finding of unconstitutionality must be beyond a reasonable doubt. The burden is on the one attacking the statute, here the plaintiffs. I examine the statute in question with that test in mind. One of the difficulties with the approach of the majority is that it is not only a weak rendition of the test for constitutionality but it also implicitly shifts the burden to the defendants to show the statute is not unconstitutional.

The opinion of the majority rests on the proposition that "the measure of damages is a question of fact within the jury's province." Majority, at 645. A moment's reflection, however, will demonstrate that this statement is not the real issue. The real question, of course, is whether the jury's fact–finding function to measure damages extends to the remedy phase. In other words, is the jury's authorized measurement of damages necessarily translated, without limitation, into the legal remedy finally given. *See Etheridge v. Medical Ctr. Hosps.,* __ Va. __, 376 S.E.2d 525 (1989) (statutory limit on damages in medical malpractice claims does not violate right to trial by jury—remedy is a matter of law, not a matter of fact).

The majority does not attempt to deny that the finding of damages by a jury may be subject to a legal determination as to the final award given by the court. It gives a number of examples to illustrate this point. While not denying this proposition, however, the position of the majority appears to be that the particular kinds of limitations on the jury finding pointed out by the defendants are different than the limitation under RCW 4.56.250. Throughout its discussion, however, the majority does not challenge, but indeed implicitly accepts, the general principle that the jury is not plenary in determining the amount of the judgment. Thus, in its own analysis the majority demonstrates that the question before the court is not whether the jury is the sole fact finder in the determination of whether any damages should be assessed. It clearly is. Rather, the question is whether the particular limitation which stands between the fact–finding power of the jury and the remedy of the court is constitutional.

Parenthetically, I observe that the "facts" a jury may consider are severely limited by the rules of evidence. The jury is not plenary in deciding what "facts" may be reviewed in determining damages. *See* James, *Sufficiency of the Evidence and Jury–Control Devices Available Before Verdict*, 47 Va. L. Rev. 218 (1961). I also note that in the early part of the 19th century it was thought juries had the legal and moral *right* to decide questions of law. Juries continue, of course, to have the *power* to decide the law in returning a general verdict. *See* Note, *The Changing Role of the Jury in the Nineteenth Century*, 74 Yale L.J. 170 (1964). This view of the power of the jury is no longer the rule in any American jurisdiction and has never been the rule in this state. Even so, it serves to remind that the final award which is made or remedy which is granted involves a question of law as well as simply a determination of facts.

The distinction between the fact–finding power of the jury and the remedy granted by the court is well illustrated by the case of *Tull v. United States,* 481 U.S. 412, 95 L.

Ed. 2d 365, 107 S. Ct. 1831 (1987); *cf. Dimick v. Schiedt*, 293 U.S. 474, 490–94, 79 L. Ed. 603, 55 S. Ct. 296, 95 A.L.R. 1150 (1935) (Stone, J., dissenting) (Seventh Amendment does not restrict the court's control of the jury verdict— Hughes, C.J., Brandeis, and Cardozo, JJ., concurring in the dissent). The majority finds *Tull* "irrelevant on the issue before the court" because *Tull* involved a civil penalty in a regulatory case rather than damages in a tort action. Majority, at 648. However, by holding the right to jury trial extends to a clean water act regulatory enforcement action, did not the Court say there is no distinction between tort actions and regulatory actions?

The real issue and the relevant issue is succinctly stated by the Court:

> The Seventh Amendment is silent on the question whether a jury must determine the remedy in a trial in which it must determine liability. The answer must depend on whether the jury must shoulder this responsibility as necessary to preserve the "substance of the common–law right of trial by jury." Is a jury role necessary for that purpose? We do not think so.

(Footnote and citation omitted.) *Tull*, at 425–26.

The Court goes on to explain in footnote 9:

> Nothing in the Amendment's language suggests that the right to a jury trial extends to the remedy phase of a civil trial. Instead, the language "defines the kind of cases for which jury trial is preserved, namely 'suits at common law.'" *Colgrove v. Battin*, 413 U.S. 149, 152[, 37 L. Ed. 2d 522, 93 S. Ct. 2448] (1973). Although "'[w]e have almost no direct evidence concerning the intention of the framers of the seventh amendment itself,' the historical setting in which the Seventh Amendment was adopted highlighted a controversy that was generated . . . by fear that the civil jury itself would be abolished." *Ibid.* (footnote and citation omitted). We have been presented with no evidence that the Framers meant to extend the right to a jury to the remedy phase of a civil trial.

*Tull*, at 426 n.9.

Nor has any such evidence been presented regarding Const. art. 1, § 21. While the majority insists this is a case

to be determined on state grounds, it does not indicate how the words of the Seventh Amendment, "the right of trial by jury shall be preserved" differ in substance from Const. art. 1, § 21, "[t]he right of trial by jury shall remain inviolate". Furthermore, it gives no principled reason why this court ought to interpret Const. art. 1, § 21 differently from the Seventh Amendment. The historical dissertation by the majority of the power of the jury to determine damages, while informative, does not provide any analytical basis for extending this power to the remedy phase.

The judiciary and the Legislature have in the past made policy choices which have stood between the damages found by the jury and the ultimate remedy, *i.e.,* punitive damages, immunity, and treble damages. The majority attempts to distinguish these examples through its 1889 analysis as to what causes of action the right attaches. Even conceding the application of this analysis to recent tort theories, it begs the question. Whether the right to trial by jury attaches to a cause of action does not determine whether this right extends to the remedy phase. Why is the alteration of the jury's determination of damages in this case different from other allowable alterations? The majority never says why; it simply says it is so.

Not only does the majority not address the real issue, the cases relied on by the majority do not even establish as a historical fact that the right to jury trial in 1889 extended to damages determinations. The court in *Baker v. Prewitt,* 3 Wash. Terr. 595, 19 P. 149 (1888) held that a jury should have determined the damages attendant to a default judgment. The court relied on sections 204 and 289 of the territorial code. Section 204 stated that "[a]n issue of fact shall be tried by a jury . . ." Section 289(2) provided that a trial court "may order the damages to be assessed by a jury" in actions in which "the defendant fail[ed] to answer to the complaint". Code of 1881, §§ 204, 289. What *Prewitt* held, therefore, was only that under the existing statutes, a right to have a jury determine damages existed in default judgments. The case has not been extended, before now, as

authority for a right to a jury determination of damages in other contexts. Arguably, *Prewitt*'s interpretation of section 289 was incorrect in any event, as the provision uses the permissive "may" rather than the mandatory "shall". However, even if *Prewitt* correctly interpreted the territorial code and the *Prewitt* rule applies outside the default judgment context, are all of the more than 40 sections of the territorial code describing jury functions and procedures now to be accorded constitutional stature? Given the predilections of the majority, it would seem so.

The other cases the majority cites are equally unpersuasive as authority to derive the right to jury determined damages. *James v. Robeck,* 79 Wn.2d 864, 869–70, 490 P.2d 878 (1971), which leads off the majority's recitation, does describe damages determination as a constitutionally consigned jury function. However, although *James* overturned a trial court's order reducing a jury–determined damage award, it noted that such a reduction would not be improper in all cases. *James,* at 871. In this respect, *James* refutes the majority's contention that the scope of the constitutional jury right is equivalent to the scope of jury powers under the territorial code. Section 276 of the Code of 1881 provided that when the jury returns "[e]xcessive damages, appearing to have been given under the influence of passion or prejudice", a new trial may be had. The provision does not authorize the trial court simply to reduce the damages as an alternative to a new trial, as *James* and the cases it cites allow.

Similarly, *Dacres v. Oregon Ry. & Nav. Co.,* 1 Wash. 525, 20 P. 601 (1889) is not persuasive to the majority's position. The statute at issue was held violative of the Seventh Amendment jury trial right, not the state constitutional provision. Moreover, *Dacres* did not say the statute offended the federal jury trial right because it prevented a jury determination of damages. Even if it had, it would have been proved wrong by *Tull.*

The remaining Washington cases the majority claims recognize "the constitutional nature of the jury's damage–

determining role" (majority, at 646), ultimately rely either on *Walker v. McNeill*, 17 Wash. 582, 50 P. 518 (1897) or *Martin v. Foss Launch & Tug Co.*, 59 Wn.2d 302, 367 P.2d 981 (1962). The *Anderson* and *Kellerher* cases describe damages determinations simply as "a jury function", *Anderson v. Dalton*, 40 Wn.2d 894, 897, 246 P.2d 853, 35 A.L.R.2d 302 (1952), and "primarily the province of the jury", *Kellerher v. Porter*, 29 Wn.2d 650, 666, 189 P.2d 223 (1948), and both substantively rely only on *Walker v. McNeill, supra. Walker* noted the advantages of having a jury determine damages, but in the end reduces as excessive the damages the jury had determined in the case.

*Worthington v. Caldwell*, 65 Wn.2d 269, 273, 369 P.2d 797 (1964), *Bingaman v. Grays Harbor Comm'ty Hosp.*, 103 Wn.2d 831, 835, 699 P.2d 1230 (1985), and *Lyster v. Metzger*, 68 Wn.2d 216, 224–25, 412 P.2d 340 (1966) all rely either directly on *Martin v. Foss Launch & Tug Co., supra,* or on cases citing *Martin* as precedent. Interestingly, *Martin* first cites a legislative statute, RCW 4.76.030, for the proposition that there is a statutory presumption that the jury verdict is correct. *Martin,* at 303. Next, *Martin* cites *Anderson v. Dalton, supra,* for the maxim that "the determination of damages is primarily a jury function." *Martin,* at 303. Finally, *Martin* cites *Scobba v. Seattle,* 31 Wn.2d 685, 198 P.2d 805 (1948), which states that the trial court has inherent discretion to relieve a party of an excessive verdict by giving the prevailing party the option to accept a smaller amount or submit to a new trial. *See also Ticknor v. Seattle–Renton Stage Line,* 139 Wash. 354, 358, 247 P. 1, 47 A.L.R. 252 (1926) ("[I]t is within the discretion of the trial judge to require an acceptance of a less amount than the verdict, or a new trial will be granted."). Whether the award is reduced by consent or a new trial is granted, there is an underlying power to limit the damages found by the jury. If the jury's determination of damages translated automatically, by constitutional fiat, into the legal remedy, how could such a common law rule be constitutional?

The majority also cites *Worthington v. Caldwell, supra,* for the proposition that "'[q]uestions of damages should be decided by the jury. . .'". Majority, at 646. Following the line of cases cited by *Worthington* leads only to precedent which allows a trial judge to reform an irregular verdict in accordance with the jury's intent. *See Weihs v. Watson,* 32 Wn.2d 625, 630, 203 P.2d 350 (1949); *Richey & Gilbert Co. v. Northwestern Natural Gas Corp.,* 16 Wn.2d 631, 651, 134 P.2d 444 (1943); *Bobst v. Hardisty,* 199 Wash. 304, 306, 91 P.2d 567 (1939); *City Bond & Share, Inc. v. Klement,* 165 Wash. 408, 411, 5 P.2d 523 (1931); *Beglinger v. Shield,* 164 Wash. 147, 153, 2 P.2d 681 (1931); *Gosslee v. Seattle,* 132 Wash. 1, 2–4, 231 P. 4 (1924); *Buffington v. Henton,* 70 Wash. 44, 47–48, 126 P. 58 (1912); *Casety v. Jamison,* 35 Wash. 478, 480, 77 P. 800 (1904). Contrary to the majority's bold conclusion, this court has never constitutionalized the jury's right to determine damages. Even conceding this point, however, there is no precedent for extending the scope of this right to the remedy phase.

The entire analysis of the majority on the relevant issue, with no authority cited, is found on page 655 of its opinion:

Respondents also contend that the damages limit affects only the judgment as entered by the court, not the jury's finding of fact. This argument ignores the constitutional magnitude of the jury's fact–finding province, including its role to determine damages. Respondents essentially are saying that the right to trial by jury is not invaded if the jury is allowed to determine facts which go unheeded when the court issues its judgment. Such an argument pays lip service to the form of the jury but robs the institution of its function. This court will not construe constitutional rights in such a manner.

In essence this is the opinion of the majority. It is a conclusion with no support. Unasked by the majority and unanswered by its opinion is the question as to why this particular limitation in RCW 4.56.250 would rob the jury of its function if other limitations, such as treble damages and remittitur, do not? How does one know the jury is robbed

of its function when the majority has not delineated the scope of that function?

Certainly, the jury is entitled to determine the facts which will lead to its assessment of damages and ultimately to the imposition of a remedy by the court. This is a constitutional right which is and must remain inviolate. This does not mean, nor has it ever meant, that the jury's determination of what it believes to be the damages is a constitutional absolute which may not be changed by action of law. It seems to me the majority, with its all or nothing analysis and its failure to distinguish between the damages a jury finds and the judgment which the court grants, *i.e.,* the remedy, needlessly, improperly, and harmfully puts the Legislature, and this court, in a doctrinal straitjacket. To say the Legislature may eliminate the cause of action but not limit the remedy neither accords with common sense nor does it necessarily flow from the constitutional right to trial by jury.

Not only are the facts which a jury may consider limited, it has never been the rule in this state that a jury may assess damages as it chooses from the facts which are presented to it. For example, we have long refused to allow juries to assess compensatory or punitive damages, regardless of whether the facts before the jury might persuade it otherwise. *Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 25 P. 1072 (1891); *Barr v. Interbay Citizens Bank,* 96 Wn.2d 692, 649 P.2d 827 (1981). Although this is a common law limitation, other examples can be given where legislative action has altered the effect of a jury's determination of damages: RCW 4.22.005, reversing *Seay v. Chrysler Corp.* 93 Wn.2d 319, 609 P.2d 1382 (1980) (see discussion of *Seay v. Chrysler Corp., infra*); RCW 19.86.090 (authorization of treble damages by court in consumer protection action); RCW 79.01.756 (treble damages for cutting or manufacturing timber without authorization).

The most closely analogous legislative action, unmentioned by the majority, is contained in *Seay v. Chrysler Corp., supra.* In *Seay,* we refused to apply comparative

negligence in product liability actions. Product liability actions were judicially created. *See Seay v. Chrysler Corp.,* at 325 (Utter, C.J., dissenting). Thus, in product liability cases in which there was in fact negligence by the plaintiff, since comparative negligence would not apply, there would be higher verdicts and settlements. In *Seay* we held the comparative negligence statute (former RCW 4.22.010) applied only to actions based on negligence and did not apply to causes of action for strict product liability which is based on a no–fault concept. The following year the Legislature enacted RCW 4.22.005, which reversed *Seay* and applied the doctrine of comparative negligence to strict liability cases.

The effect of this legislative action can be seen by taking two hypothetical cases where the facts were identical, the finding of damages by the jury was identical, and there was the same degree of contributory negligence by the plaintiff. Prior to RCW 4.22.005, the plaintiff would have received the *entire* amount of the jury determination of damages. Following RCW 4.22.005, the damages would be reduced by the percentage of the comparative negligence of plaintiff. The doctrine of strict liability would remain the same, the factual basis on which the jury measured damages would remain the same, and the damages for the injury would remain the same. But, by the operation of law, the *recovery* which, say yesterday would be $1,000, would today be $1,000 *minus* any contributory negligence by plaintiff. From an analytical standpoint, I fail to see any difference between my hypothetical case in which the finding of damages by the jury in a common law cause of action is reduced by statute so the *recovery* is less and the case before the court whereby statute the recovery is also less even though the "damages" found by the jury would be a greater amount.

The Legislature has also consistently removed common law causes of action by providing immunity or defenses for the actions. RCW 4.24.200–.210 (immunity from liability of

owner of land or water used for recreation), upheld in *Riksem v. Seattle,* 47 Wn. App. 506, 736 P.2d 275, *review denied,* 108 Wn.2d 1026 (1987); RCW 4.24.300 (immunity from liability of persons rendering emergency care); RCW 4.24.400 (immunity from liability of building warden assisting evacuation or attempting to control hazard); RCW 4.24.410 (immunity from liability of dog handler using police dog in line of duty); RCW 5.40.060 (absolute defense to an action for personal injury or wrongful death when influence of liquor or drugs was a proximate cause of the injury or death); RCW 7.68 (crime victims' compensation act), upheld in *Haddenham v. State,* 87 Wn.2d 145, 550 P.2d 9 (1976); former RCW 46.08.080 (motor vehicle guest statute) (repealed by Laws of 1974, 1st Ex. Sess., ch. 3, p. 2) upheld in *Shea v. Olson,* 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998 (1936); RCW 68.50.400(3) (immunity from liability of person donating anatomical parts); RCW 70.136-.050 (immunity from liability of persons in agencies rendering aid in hazardous materials incidents).

The majority agrees the Legislature has the power to remove causes of action altogether. If the statute is examined from this perspective, it appears the Legislature in enacting RCW 4.56.250 has eliminated, in effect, any cause of action in which the damages are above the amount allowed in the act. If, as the majority states, when a cause of action is "completely done away with, then the right to trial by jury becomes irrelevant" (majority, at 651) it is, in fact, describing the essence of the statute before the court. By operation of law there can be no cause of action which would have damages in excess of the statutory formula. Within the statutory amounts (*i.e.,* the allowable causes of action) the jury may determine damages as it finds them under the facts of the case.

Rather than analyze why the lesser power to limit recovery is not included within the greater power to abolish causes of action, the majority proceeds with a talismanic incantation of the right of trial by jury. The majority

essentially makes up arguments to distinguish the noneconomic loss situation from the workers' compensation and treble damages situations which clearly illustrate limitations on the jury function in determining remedies. Most troublesome about the majority discussion on this question is the gratuitous holding that there is no right to trial by jury for Consumer Protection Act claims. The reasoning behind this conclusion is woefully inadequate, especially when the majority lectures so strongly about applying a "flexible historical approach" (majority, at 649) to determine when the jury right attaches.

The Legislature perceived a problem in our tort law and believed reform was necessary. Laws of 1986, ch. 305, § 100, p. 1354. It enacted comprehensive tort law revisions which it stated were "to create a more equitable distribution of the cost and risk of injury and increase the availability and affordability of insurance." We may question the efficacy of the legislation (*see* Priest, *The Current Insurance Crisis,* 96 Yale L.J. 1521, 1587–90 (1987)). Nonetheless, the Legislature took action which it hoped and believed would remedy or partially remedy the problem. While we may wish it had acted otherwise, we are bound to uphold the statute unless it can be shown to be unconstitutional beyond a reasonable doubt. The plaintiffs have not met their burden. Therefore, I dissent.

CALLOW, C.J., concurs with DOLLIVER, J.

DURHAM, J. (dissenting)—I concur in Justice Dolliver's dissent. There are a few additional comments that I feel should be made, however.

First, Section I of the majority opinion is pure dicta. The court does not decide in this case any issue requiring construction of Const. art. 1, § 12. Thus, the majority's gratuitous discussion of how the Oregon Supreme Court has interpreted a similarly worded provision of Oregon's constitution is irrelevant and inappropriate. A variety of forums

is available to members of the court who have settled opinions on the meaning of our state constitution. This is not the time or the place.

Second, I am astonished to learn from the majority that the methodology we developed in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986), for ascertaining when a state constitutional provision may be relied upon as an independent source of right, was "clarified" in *State v. Wethered,* 110 Wn.2d 466, 755 P.2d 797 (1988). This simply is not so. In *Wethered,* we declined to engage in analysis of Const. art. 1, § 9, because counsel had not adequately addressed the *Gunwall* criteria. Far from altering *Gunwall's* methodology, in *Wethered* we had no occasion even to consider it.

Not only is *Wethered* now called a "clarification" of *Gunwall,* it also is cast as a response to criticism in a Washington Law Review case note. This is again a mischaracterization. *Wethered* says nothing about the *Gunwall* criteria other than that any argument favoring independent analysis of a state constitutional provision must address them. Thus, *Wethered* expresses no opinion on, and is in no way responsive to, any criticisms of the analytic methodology we described in *Gunwall.*

More simple means are available to refute the "implication" by Chief Justice Callow that the majority finds troublesome. *See State v. Reece,* 110 Wn.2d 766, 778, 757 P.2d 947 (1988) ("There is no presumption of adherence to federal constitutional analysis."). The majority's distortion of *Wethered* for this purpose is unnecessary and inappropriate.

Third, the majority's discussion of how its ruling affects the trebling of damages in Consumer Protection Act actions is dangerously confusing. The majority attempts to save treble damages by a swift and discursive "historical analysis" which concludes that causes of action under the Consumer Protection Act are "outside of the strict purview of article 1, section 21." Footnote 6. Later, responding to Justice Dolliver's criticism of this conclusion as a "gratuitous

holding" based on "woefully inadequate" reasoning, dissent of Dolliver, J., at 687, the majority recants:

As for the "gratuitous holding" regarding the Consumer Protection Act discussed by Justice Dolliver's dissent at page 687, we have not reached such a fundamental conclusion. We are unable to because the Consumer Protection Act is not an issue in this case. We cannot decide cases not before us.

Majority, at 666.

This is rhetoric over reason. The majority's opinion leaves only two possibilities for the validity of the Consumer Protection Act's treble damages provisions. Either treble damages are unconstitutional, or there is no right to a jury trial in actions under the Consumer Protection Act. In light of the majority's gratuitous analysis on this issue, and notwithstanding its disclaimer, lower courts will feel constrained to choose the latter option. How sad that "such a fundamental conclusion" is so carelessly determined.

Finally, it is remarkable the way the majority skirts around a decision upholding the workers' compensation scheme. Though this decision was not supported by "historical analysis", the majority nevertheless affirms it, apparently on the basis that a competing constitutional concern justified the legislative action.

I cannot understand why the Legislature can remove damages determinations from the jury as part of the workers' compensation scheme, but it cannot do so in other actions. The "independent constitutional foundation" that the majority apparently believes saves the workers' compensation scheme was nothing other than the state's general police power. *See State v. Mountain Timber Co.,* 75 Wash. 581, 135 P. 645 (1913), *aff'd,* 243 U.S. 219 (1917). As described in *Mountain Timber,* this police power is broad enough to justify the noneconomic damages cap. Where's the distinction? And why is a "detailed historical analysis" not necessary for workers' compensation, when it is so essentially dispositive here?

The majority's only answer is to hold that the Legislature can eliminate the jury right by abolishing a common law cause of action, but it cannot do so merely by limiting or redefining causes of action. "Otherwise, article 1, section 21 means nothing." Majority, at 652. Otherwise, the majority says, the jury right is form but not substance. As Justice Dolliver so well observes, there is just no sense in this. Under the majority's reasoning, the form of the legislative action—whether it supplants a cause of action, or merely imposes limits on it—is ultimately dispositive on the constitutional issue. *That* is form over substance.

CALLOW, C.J., and DOLLIVER, J., concur with DURHAM, J.

After modification, further reconsideration denied September 27, 1989.